### ELIZABETH F. STRONG *vs.* ABRAHAM JACKSON & others.

Suffolk. Nov. 21, 22, 1876. — July 3, 1877. AMES, ENDICOTT & SOULE, JJ., absent.

If one who holds, by an assignment duly recorded, a mortgage and a note indorsed in blank, purporting on its face to be secured by it, " the same being collateral to " a certain note, assigns the mortgage, and afterwards indorses the note for which it was collateral, retaining the mortgage note, to another, by an assignment in like words duly recorded, he conveys a title to the mortgage debt, except as against an innocent purchaser for value without notice; and one, to whom he subsequently passes the mortgage note and fraudulently assigns the mortgage upon a separate paper as collateral security for a loan, is not such a purchaser.

BILL IN EQUITY by Elizabeth F. Strong against Abraham Jackson, his assignees in bankruptcy, Edwin E. Kingsley, the Tremont National Bank, the First National Bank of Boston and John McQuaid, to redeem a mortgage.

At the hearing, before *Endicott,* J., the parties agreed that such decree might be entered, without regard to the form of the pleadings, as the court should think proper, on the facts, to decide their respective rights, and, there being no fact in dispute, the judge reserved the case for the consideration of the full court. If the plaintiff was entitled to redeem, the case was to be sent to a master. The facts appear in the opinion.

*J. Fox,* for the plaintiff.

*R. M. Morse, Jr. & F. V. Balch,* for the Tremont National Bank.

*W. G. Russell & G. Putnam, Jr.,* for the First National Bank.

LORD, J.   We have again to decide which of several persons who have done no wrong shall suffer by reason of the fraud of Abraham Jackson.   The plaintiff, on April 28, 1874, was the owner of a note made to her by John McQuaid for the sum of $3500, which note was secured by a first mortgage upon certain land in Boston.   On June 30, 1874, her son in law, Edwin E. Kingsley, desired to borrow of Abraham Jackson the sum of $3200, which Jackson agreed to lend upon receiving an assignment of said mortgage as collateral security therefor.   The plaintiff, to accommodate her son in law, assented to this, and executed an assignment of said note and mortgage to Jackson on that day.   The assignment in terms expressed " the same being collateral to Edwin E. Kingsley's note for $3200, dated June 30, 1874."   The mortgage note was indorsed by the plaintiff in blank.

On January 7, 1875, Jackson assigned the mortgage to the Tremont National Bank as security for a previous debt of his to the bank, indorsing the Kingsley note in blank and passing that and the assignment of the McQuaid mortgage to the bank, but retained in his own possession the McQuaid note.   The assignments to Jackson and from Jackson to the Tremont Bank were recorded, and the latter contained the same language as the former, " the same collateral to Edwin E. Kingsley's note for $3200, dated June 30, 1874."

On January 25, 1875, Jackson passed the McQuaid note with his blank indorsement to the First National Bank, as collateral security for a loan then made by said bank to him.   He also, upon a separate paper, assigned the McQuaid mortgage to said bank, in which no reference was made to the Kingsley note.

In this condition of things, the First National Bank contends that it has the right to hold and collect the McQuaid note to its own use, and to have a decree that the Tremont National Bank hold the mortgage in trust for the benefit of said First National Bank.   The Tremont National Bank asks for a decree that the First National Bank shall hold the McQuaid note in trust for it as collateral security for the Kingsley note, and to convey the same to it, so that it may be surrendered to the plaintiff upon the payment of the Kingsley note.   The plaintiff

desires a reassignment to herself of the mortgage and note, upon the payment of the Kingsley note, for which she pledged it.

The assignment by Jackson to the Tremont National Bank of the McQuaid mortgage, by which in terms he sold and transferred " the mortgage deed, the real estate thereby conveyed, the promissory note, debt and claim thereby secured, and the covenants in said mortgage contained," made the McQuaid note, as between himself and the bank, the property of the Tremont National Bank. It became the property of said bank, not only as against Jackson, but as against all the world except a *bond fide* purchaser for value and without notice. The First National Bank claims to be such holder, and unless it is, it has no claim upon the note. Is that bank such a holder? This involves perhaps as much an inference of fact as a principle of law, or rather a mixed question of law and fact; but whether an inference of fact or a question of law, upon the reservation in equity by a single justice, the full court must decide it. *Parks* v. *Bishop*, 120 Mass. 340. The claim of the First National Bank is that the note is a negotiable promissory note, not matured, and that there was nothing to indicate that it was not what it seemed to be, and nothing to show that Jackson was not the owner of it and authorized to deal with it; and that, although it purported to be secured by mortgage, yet, as held in *Morris* v. *Bacon*, *ante*, 58, the mortgage is but an incident to the debt, and whether the mortgage is or is not available is a risk which the assignee of the debt is content to take.

In the cases in which the question has been whether a party to a transaction is affected with notice of other equities, it is often stated that a particular fact is or is not sufficient to charge a party with notice. For example, the cases are very numerous in which it is said that the open and exclusive possession of real estate is notice to a subsequent purchaser of the equities of the person thus in open possession; the cases are perhaps equally numerous in which it is said that such possession is not notice. And so of a variety of other independent facts. These cases are perhaps as fully cited in Sugden on Vendors, (8th Am. ed.) 755–765, and notes, as in any single collection of them. Upon the examination of those cases, it will be found that it is very rarely decided that any one fact is or is not con-

clusive evidence of notice. Indeed, in the nature of things, it can scarcely happen that the question is to be decided upon an isolated fact. It may be that in a particular case some single fact in and of itself is sufficient, but generally it is not so. The question is ordinarily a broader one ; it is this : Do all the facts, taken in connection with the subject matter, with the situation and relation of the parties, their means of knowledge, the circumstances which should lead to inquiry, together show such a state of facts that it would be inequitable for subsequently acquired rights to supplant rights previously acquired ? In this view, a fact, which under some circumstances and some situations and relations of the parties would be insignificant, in other relations of the parties and under other circumstances would be decisive ; and thus many apparently conflicting decisions will be found to be harmonious. The question is, not does any one fact, but does the whole case, disclose such a state of circumstances as that it is inequitable for a person having subsequent rights to enforce such rights against an elder title defective only by reason of some legal rule. If it does, the elder title should prevail.

It is quite clear that a note payable five years after date, with a memorandum upon it that it is secured by mortgage upon real estate, is not what by men of business is usually denominated commercial or business paper ; and we think there is a material distinction between securities of this kind and strictly mercantile paper ; and that such paper as this may be subject to equities, when strictly mercantile paper would not be ; not that the rule of law is different, but what would attract no attention in relation to purely business paper should attract the attention in paper of this description. According to the practice which originally prevailed in relation to mortgages of real estate in this Commonwealth, the assignee of a mortgage debt would always take subject to all equities ; because the evidence of the mortgage debt was then a bond. In *Crane* v. *March*, 4 Pick. 131, Parker, C. J., says : " In the form usually practised in regard to mortgages, until lately, these difficulties could not occur, for the collateral personal security was a bond, which not being assignable at law, the action upon it would be always in the name of the obligee, and the assignee in equity could avail him-

self of no means of enforcing payment from which the obJigee would be restricted." The Chief Justice proceeds to add advice, which it is to be regretted has not been followed by conveyancers : " Mortgagors may protect themselves from having their time of redemption reduced, by giving bonds, or notes not negotiable." It had been decided in *Atkins* v. *Sawyer*, 1 Pick. 351, that the mortgagee could not sell on execution the equity of redemption upon a judgment recovered upon the mortgage note, for the reason that the equity of redemption would thereby be reduced from three years to one. But in *Crane* v. *March* it was held that the assignee of one of several mortgage notes might seize and sell the equity of redemption upon execution, although the effect of such seizure and sale would be to reduce the time of redemption. In that case, and the cases which have since arisen, the difficulties have been caused by the fact that, as in this case, the note and the mortgage have been in different hands and under various circumstances ; and there was nothing in the several cases to show that the holder of the note necessarily had knowledge of the mortgage, and, as is said in *Crane* v. *March*, the record " would inform him only that a note of like tenor and date was so secured." As between the original parties, the note and mortgage are but one transaction, and but one security. When, however, as in this case, the note purports upon its face to be a mortgage note, we think note and mortgage are to be construed together in determining the rights of the holder of the note.

The reference upon the note to the mortgage, under the circumstances, is of much significance ; the mortgage describes the note ; the note refers to the mortgage ; and, in the condition of things at the time the First National Bank took the security, we think that the taker of either must take according to the true title of him who transfers it, as such title is apparent upon proper examination of it. It is to be observed, as a fact of considerable importance, that Jackson was not and did not claim to be the original mortgagee, but claimed to hold the note and mortgage by assignment. His title was on record. If the First National Bank had examined the record to see if Jackson had a title, or if it had called upon him to exhibit his title, it would have been apparent at once that he was committing a fraud.

The assignment to him would have shown that he held the note for a purpose inconsistent with his proposed sale or transfer of it; while the record would have developed not only that fact, but the further fact that he had already disposed of the title which he originally acquired.   Under this state of facts, we cannot hold that the First National Bank took the note in the ordinary course of business without notice.   That bank not only took the note having then more than four years to run before maturity, but took also an assignment of the mortgage; and now, in its answer, claims a title to the said mortgage, and prays for a decree that the Tremont National Bank shall hold the same in trust for it.   These facts alone are quite suggestive that the First National Bank did not take the note as mercantile paper in the ordinary course of business, but took or attempted to take note and mortgage as the evidence of the same debt with substantial reliance upon the mortgaged land.   But it is impossible for this bank to trace its title, either as it actually exists, or as it appears of record, without the fraud of Jackson being manifest.   Suppose it should come into court to enforce its right under the mortgage; its own case must show that the title which Jackson had was conveyed to it in fraud of the rights of the plaintiff, while the record would show that it was thus conveyed not only in fraud of the rights of the plaintiff, but also in fraud of the rights of the Tremont Bank, to whom Jackson had already conveyed his true title.

The question whether the transaction with the First National Bank was void upon the ground that it was an attempt to evade the law of the United States, which does not allow a loan to be made by a bank upon mortgage of real estate, is a question not free from embarrassment and difficulty, and one which, in the view we have taken of the case, need not be now decided.   The result of our conclusion is that the First National Bank shall deliver the McQuaid note to the Tremont National Bank, and that the plaintiff be allowed to redeem from the Tremont National Bank the McQuaid note and mortgage, upon payment to the Tremont Bank of the Kingsley note.

*Decree accordingly.*