DAVID DONALDSON AND GORDON WOOLEY v. HELEN
WILSON AND ROBERT A. WILSON.

*Principal and agent—Mortgage—Payment—Equity—Appeal.*

1. Where, in a chancery suit, there is a direct conflict between the
testimony of the witnesses for the complainant and defendant,
with whom the appellate court is unacquainted, corroborating
circumstances, if any there be, must be considered in order to
ascertain where the preponderance of evidence lies.

2. The possession of a note and mortgage by an attorney is pre-
sumptive evidence of his right to collect the money due thereon.

3. The only question in this case is as to the right of complainant
Donaldson to pay the mortgage sought to be charged to an
attorney, who had possession of the same, and the Court find
that he had such right.

Appeal from Sanilac. (Beach, J.) Argued January 8,
1890. Decided January 17, 1890.

Bill to compel discharge of real-estate mortgage. Com-
plainants appeal. Reversed as to defendant Helen Wilson,
and decree entered in favor of complainants as against
her. The facts are stated in the opinion.

*D. S. McClure,* for complainants.

*C. F. Gates,* for defendants.

CHAMPLIN, C. J. The bill of complaint in this case
was filed to compel defendants to discharge a real-estate
mortgage. The important question in the case is, whether
complainant Donaldson was justified in paying the amount
secured by the mortgage to McMahon & McClure, or to
Joel W. McMahon, who had possession of the note and
mortgage.

Helen Wilson, being the owner of real estate situated

in the village of Marlette, Sanilac county, sold it to one William H. Baker, who executed and delivered to her a note and mortgage to secure the payment of $225, part of the purchase price. The note was dated March 1, 1880, and was payable to the order of Helen Wilson, five years from date, with interest payable annually at the rate of 7 per cent. After the note was given, and before 1883, the complainant Donaldson purchased the premises of Baker, subject to the mortgage, which he agreed to pay. On April 1, 1885, Donaldson sold and conveyed the premises to complainant Wooley, by warranty deed, with whom he agreed to pay the mortgage debt. The defendant Robert A. Wilson is the husband of Helen Wilson. It appears that on or about March 19, A. D. 1880, Robert A. Wilson executed a written agreement as follows:

"This is to certify that if the Port Huron & Northwestern Railway Company or their assigns will build a railroad depot on the south-west quarter of the northeast quarter of section four, town ten north, range twelve east, and use said depot grounds for at least five years, and not build any other depot in the village of Marlette, I promise to assign or cause to be assigned to said company or their assigns as much of a certain note and mortgage given by W. H. Baker to Helen Wilson as shall come to two hundred dollars, when said company shall have built their depot and run their cars into the same, or, in case I cannot make the above assignment, or don't wish to do so, I will pay two hundred dollars in cash; but if the company will not so build, in less than two years, we will not pay anything.

"R. A. WILSON.

"Witnessed by JOHN WILSON."

This paper was delivered to the soliciting committee of the railroad company.

The testimony introduced on the part of the complainants bearing upon the right of Donaldson to pay the

money to McMahon is the following: Joel W. McMahon testified as follows:

"Some time after the railroad was built to this town, and depot was constructed, Mr. R. A. Wilson gave me this note and mortgage, and said that the railroad company had built their road and constructed their depot in accordance with their agreement with them, and that $200 of this mortgage belonged to them, and instructed me to collect the interest that should thereafter fall due on the mortgage, and pay to the railroad company interest on $200, and to him interest on $25, and, when the mortgage was finally paid, to pay the railroad company $200, and him $25. I collected the interest on the mortgage twice, I think, and accounted with the railroad company for all interest paid on two hundred and for two hundred dollars, and with Mr. Wilson or his wife for the interest on the $25, excepting the last two years for which interest was paid.

"Q. You stated you accounted with Robert Wilson or his wife. Please state how she was connected with the transaction.

"A. Mrs. Helen Wilson came in here some time in 1883 or 1884, and wanted to know how much would be due her on that mortgage when it was paid. She said that Mr. Donaldson was then talking of paying it up. It wasn't due then. She wanted to know how much the mortgage was, how much belonged to the railroad company, and how much to her. I told her that $25 would belong to her, and $200 would belong to the railroad company, and showed her the mortgage, and showed her the amount of it. She seemed a little surprised at that, and said she thought there ought to be $100 due her on it. I told her I thought there was $200 due the railroad company, and $25 due her. I told her that the written agreement would show, and that the written agreement was in Port Huron. She said that whatever the written agreement was it would be all right, but as she remembered it there ought to be more than that coming to her. I then paid her the' interest over, on $25 for one year, which I had just collected shortly before."

The witness further testified that he collected the principal and interest due upon the mortgage from Donaldson, and wrote to defendants, who had removed to Seattle,

Washington Territory, in 1883 or 1884, and inclosed a discharge, and requested them to execute it.    Upon his cross-examination he was requested to repeat the instructions which Mrs. Helen Wilson gave in regard to the collection of this note and mortgage, and he testified as follows:

" She said that probably Mr. Donaldson would want to pay the mortgage soon.    She thought that the mortgage was due much sooner.    She told me to collect the note and mortgage, and pay the railroad company their part of it, according to the agreement Robert had made, and send her the balance.    She said she thought there would be $100 due her.    I said there would be $200 due the railroad company, and $25 to her, and she said she thought the mortgage was $300, and I went and got the note and mortgage and showed them to her."

The witness also testified that he had paid a portion of the interest which he collected upon the note to Mrs. Wilson, and a portion to Robert Wilson, and told Mrs. Wilson that he had done so.    David Donaldson testified as follows:

" Q. Now I want to go back and inquire how you happened to come to McMahon, or McMahon & McClure, to pay that mortgage.

" A. Mr. Robert Wilson, in talking to me about the property one day, told me that when the mortgage became due to pay it in to his agent, McMahon, as he stated it, and Helen Wilson, his wife, told me to pay it to McMahon & McClure."

He further testified that—

" Mrs. Wilson seemed very anxious to get some money, and asked me if I would pay it when due.    I said she could depend upon it, and she said she was glad of it, because she had an interest there."

He also testified that he paid the whole amount due upon the bond and mortgage to McMahon & McClure. McMahon & McClure were in partnership at the time. Upon cross-examination this witness testified that his

conversation with Mrs. Wilson occurred in his store in Marlette, some time in the summer of 1884.

On the part of the defendants the testimony showed that Mrs. Helen Wilson removed to Seattle in the latter part of April or first of May, 1883, and has not been in Michigan since. Mrs. Helen Wilson testifies that she is the owner of the note and mortgage; she denies that she ever authorized McMahon or McMahon & McClure to collect the note and mortgage; she denies having had any conversation with McMahon upon the subject; she denies that she ever told Donaldson to pay the note and mortgage to McMahon or to McMahon & McClure; she testifies that she don't know how the note and mortgage got into the possession of McMahon or McMahon & McClure, as she supposed they were in the possession of her brother-in-law, Henry Wilson. She does not testify how they came to the possession of Henry Wilson, and she does not deny that she received the interest collected upon the note from McMahon, as testified to by him.

Robert A. Wilson also gave testimony in behalf of defendants. He testifies that he had no knowledge how the note and mortgage in question came into the possession of J. W. McMahon or McMahon & McClure. He does not deny the making of the paper writing signed by him, of date March 19, 1880, nor does he deny the conversation which McMahon testifies he had with him relative to the note and mortgage.

Henry Wilson was sworn on behalf of defendants, and testified that he had not been the agent of Helen Wilson since she went to Washington Territory, in reference to the note and mortgage in question. He does not claim ever to have had possession of the note and mortgage.

The testimony of the witnesses in behalf of complainants and defendants is directly opposed. Being unacquainted with the witnesses, corroborating circumstances,

if any there be, must be considered in order to ascertain where the preponderance of evidence lies. In the first place the important fact appears that the note and mortgage were in McMahon's hands, and that of itself is presumptive evidence of his right to collect the money due thereon. Mrs. Wilson does not satisfactorily explain how the note and mortgage passed from her possession. She merely says that she supposed they were with her brother-in-law, Henry Wilson, but does not say how they came to his possession, or for what purpose, while he swears that he never was her agent in regard to them, and fails to state that either was ever in his possession. The note and mortgage must have passed out of her possession before she went west, and it is quite certain that Mr. McMahon received them before that time. We are clearly of the opinion, under the testimony, that Donaldson had the right to pay the money due upon the note and mortgage to McMahon, and that the complainants are entitled to have the mortgage lien discharged from said land. This is the only point involved.

We do not decide in this suit, as we could not under the pleadings, whether McMahon must not account to Mrs. Wilson for the money collected. That is a controversy between Mrs. Wilson and Mr. McMahon with which, as yet, we have nothing to do

Robert A. Wilson answered, but no replication was filed, and as to him the cause stands upon bill and answer. Complainants have made no case against him, and the bill as to Robert Wilson will be dismissed, with costs of both courts.

The defendants will be allowed the costs of the motion made at the last term, to have the appeal entered and dismissed for want of prosecution, which may be offset against so much of the costs taxed in favor of complainants.

The decree of the circuit court must be reversed as to defendant Helen Wilson, and as to her a decree entered in accordance with the prayer of the bill. The complainants will recover the costs of both courts as to her. The record will be transmitted to the court below.

The other Justices concurred.