MICHAEL F. MURPHY *vs* MARY E. BARNARD & others.

Suffolk. December 12, 1893. — September 5, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Assignment of Mortgage — Constructive Notice — Payment of Principal to Mortgagee after Assignment.*

One who purchases from the mortgagee a mortgage which the latter has previously sold and transferred to another by an assignment duly recorded takes with constructive notice of want of title in his vendor ; and although the mortgage and mortgage note are in the possession of his vendor, and are delivered with the assignment, the second purchaser takes no better title than that of his vendor, and must re-assign and deliver up the note and mortgage to their true owner.

A mortgagor who, relying upon his own supposition that the mortgage is still owned by the mortgagee, who has in fact sold it and has no authority from its owner to collect the principal, after the note has become overdue and without the production of the note, makes payments of principal to the mortgagee, is not protected as against the owner of the note by the fact that at the time of payment the mortgage note is in the possession of the mortgagee in his office in another city.

BILL IN EQUITY, filed January, 10, 1893, by the mortgagor of certain land in Chelsea, against Mary E. Barnard, Caroline E. Patch, Henry H. Letteney, and Eben Hutchinson, Junior, to redeem the land from a mortgage made to Eben Hutchinson, Senior, on October 24, 1887, to secure a note of that date for $2,200, payable to the order of the mortgagee in four years, with interest semiannually.

Hearing in the Superior Court, before *Bond*, J., who found the facts, and reported the case for the determination of this court. The material facts appear in the opinion.

The case was argued at the bar in December, 1893, and afterwards was submitted on the briefs to all the judges.

*J. A. Brackett,* for the plaintiff.

*S. L. Whipple,* for Mary E. Barnard.

*S. H. Tyng,* for Caroline E. Patch.

BARKER, J.  In this cause it is necessary to decide two controversies, one as to the amount which the plaintiff must pay to redeem his land, and another as to the ownership of the mortgage.  Both controversies arise from the frauds of Hutchinson, the original mortgagee, who not only has twice sold the mortgage as his own property, but has, after having sold it, received large payments from the mortgagor, who made them supposing that Hutchinson was still the owner of the mortgage.  The mortgage was made on October 24, 1887, to secure a note of that date payable to the order of the mortgagee in four years, with half-yearly interest, and was recorded on the next day.  The mortgage and note were held and owned by the mortgagee until January 14, 1888, when they were sold by him to Mrs. Patch for the sum of $2,200.  She took an assignment in the usual form, and caused it to be recorded.  The note was indorsed in blank, and delivered to her with the assignment, the mortgage deed, and an insurance policy procured by the mortgagee.  At the same time it was arranged between her and the mortgagee that the latter should collect the interest as it should become due, retain that which had then accrued, and remit to her that which should accrue.  Three days later an assignment of the mortgagee's interest in the insurance was written on the face of the policy, and the assent of the insurers was added on the following day.  All these documents were kept by Mrs. Patch until June 25, 1890.  In the mean time an instalment of interest was paid to her by the mortgagee, and she indorsed on the note, " May 10, 1888. Interest received to April 24, '88, $66."  The mortgagee was an attorney at law doing a real estate loan business, and had an office in Boston and another in Chelsea.  On April 24, 1890, he represented to Mrs. Patch that he ought to have the documents relating to the loan, and a paper signed by her to enable him to collect the interest.  He prepared a paper for her to sign, and by false and fraudulent representations as to its purpose and contents induced her to sign it.  It was in fact an assignment of the mortgage from her to one Letteney,

a clerk in his office, and was dated April 24, 1890, and witnessed by the mortgagee and acknowledged before him as a justice of the peace.   Mrs. Patch had made no indorsement on the note except that of May 10, 1888, and before June 25, 1890, at some time when she had the note at the mortgagee's office, he indorsed on it the four other payments of interest then accrued.   On June 25, 1890, he induced Mrs. Patch to deliver to him the mortgage, note, insurance policy, and her assignment, and gave her a receipt stating that the mortgage was to be held by him for the "collection of interest, etc."

On November 14, 1890, he sold and assigned the mortgage to Miss Barnard, and received from her $2,200.   He represented to her that he owned the mortgage, and said nothing about the assignment to Mrs. Patch, or that from Mrs. Patch to Letteney.   Before the transfer was completed Miss Barnard told him that she wanted a search of the registry, and he asked if she had any one in mind to do it, and as she replied that she had not, he mentioned a young man in his office who could do it, and the young man went out and she waited for him to return, when he reported that it was all right.   It did not appear in evidence who this man was, or whether he made a search and no charge was made for the search.   All this was done at the mortgagee's office in Boston, and the note, the mortgage, the insurance policy, and the assignment to Miss Barnard were all delivered there.   Miss Barnard's home was in Michigan.   She took the mortgage with her, leaving her assignment with the mortgagee to be recorded and then sent to her, and the insurance policy was also left with him to be transferred to her.   He was to collect the interest and send it to her.   He requested her to leave the papers with him, and, upon her objecting, he explained that the maker of the note might desire to see the interest indorsed on it, and she left the note with him.   He sent to her the interest due April 24, 1891, and in October or November, 1891, the interest due October 24, 1891, and also that to become due April 24, 1892. The assignment of April 24, 1890, from Mrs. Patch to Letteney, an assignment dated October 14, 1890, from Letteney to the mortgagee, and the assignment of November 14, 1890, from him to Miss Barnard, were all recorded on March 16, 1891.

The report finds that Miss Barnard had no actual knowledge of the assignment to Mrs. Patch, or of that from her to Letteney, or of that from Letteney to the mortgagee, and that in buying the mortgage she did not rely on them, but believed that the mortgagee held the note and mortgage as the original owner; that she did not see the assignment written into the insurance policy, although she had the opportunity so to do, and that nothing was said to her by the mortgagee, or by the person who went out to examine the records, about any of the assignments. The interest due October 24, 1890, was paid by the plaintiff to the mortgagee on October 25, 1890, but it is not stated whether that payment has ever been indorsed upon the note. Miss Barnard contends that, because the debt is the principal thing in the purchase and sale of a mortgage, and the mortgage an incident to the debt, her rights are to be settled upon the facts relating to the note ; and that as she purchased in good faith and for full consideration, before maturity, a negotiable promissory note from the payee having possession of it, she took an absolute title, although her vendor had none. She also contends that Mrs. Patch was negligent in leaving the note and mortgage in the hands of the mortgagee, and that as between Mrs. Patch and herself the former must bear the loss.

The report shows that Miss Barnard bought in good faith and without actual notice. But her purchase was not the purchase of negotiable paper *simpliciter.* While the title of one who buys ordinary commercial paper in good faith and before its maturity is not vitiated by the fact that there were suspicious circumstances which might have put him upon inquiry, (*Smith* v. *Livingston*, 111 Mass. 342, and *Freeman's National Bank* v. *Savery*, 127 Mass. 75,) there is a distinction between the purchase of such paper and that of notes known to be secured by mortgage of real estate, although bought as negotiable paper. *Strong* v. *Jackson*, 123 Mass. 60. The effect of the distinction is that subsequently acquired rights in mortgage notes will not be allowed to supplant rights previously acquired, if all the facts taken together, and including the means of knowledge and any circumstances which should lead to inquiry, show that such a result would be inequitable. If

Miss Barnard's rights as against Mrs. Patch were to be settled
on this basis, the fact that Miss Barnard saw the insurance
policy on which the assignment to Mrs. Patch was indorsed
would· be of some importance.    But her title is not to be
so settled.    She did not buy a mortgage note only, but the
mortgage also.    And when the transaction is in terms the pur-
chase of a mortgage as both a debt and a conditional estate
in land, the distinction becomes decisive, because of the doc-
trine that the purchaser of a mortgage is charged by statute
with constructive notice of the state of the record title, when,
as in the present case, the record discloses not only a want
of title in his vendor, but the fact that the title to the mort-
gage was in the person who now claims adversely to the pur-
chaser.    One who purchases under such circumstances is not
a purchaser without notice, but with constructive notice of
the want of title of his vendor.    In the present case, Miss
Barnard knew that in buying the note she was buying a
mortgage, and in determining her rights as against those of
the real owner of both note and mortgage she is to be charged
with knowledge of the facts of which as purchaser of the mort-
gage she had constructive notice, namely, that the note and
mortgage had been sold by her vendor to Mrs. Patch on January
14, 1888, and that Mrs. Patch continued to be the record owner
of the mortgage.    Miss Barnard therefore was not a purchaser
without notice, but with a constructive notice of an infirmity in
the title of her vendor ;  and, as he had in fact no title, she took
none as against the owner.    Nor is she aided by the fact that
when she made her purchase the unrecorded assignments from
Mrs. Patch to Letteney and from Letteney to Hutchinson were
in existence, and in the hands of Hutchinson.

The counsel of Miss Barnard contends that the examiner
must have known of these assignments, and relied upon them ;
and that, as she relied upon the statement of the examiner, she
in effect relied upon the assignments, so that, as against her, Mrs.
Patch cannot claim that the assignment was procured by fraud.
But the report does not find that the examiner knew of the
assignments, and we cannot infer that because he was a young
man in Hutchinson's office he did know of them.    Her instruc-
tions to him were only to make a search of the registry.

Upon the report, the assignment from Mrs. Patch to Letteney was not a merely voidable instrument, but was utterly void. It was not delivered as an assignment of the mortgage, but as a paper authorizing Hutchinson to collect the interest. Hence the rule that title will pass to a *bona fide* purchaser for value from one who has a conveyance voidable for fraud is not applicable in this case. The principle which protects those who in good faith hold or claim under instruments bearing a genuine signature, which the maker has written supposing that he was signing an instrument of some other description, is that the maker has negligently allowed what appears to be a valid instrument to go out with his signature, and as against those who innocently rely upon it is estopped from denying its genuineness. This principle applies only in favor of those who have acted on the faith of his signature, and in this case Miss Barnard knew nothing of the assignment which Mrs. Patch had executed, nor of that from Letteney to Hutchinson, and did not rely upon either of them. She cannot claim that Mrs. Patch is estopped from showing that the assignment to Letteney was void for fraud. Nor is the contention that Mrs. Patch was negligent in leaving the note and mortgage in the hands of Hutchinson sustained by the report. He was an attorney at law, doing a real estate loan business in two cities, and it is not negligence to intrust to such a person the custody of a note and mortgage. The result is, that as between these two defendants Mrs. Patch is, in the opinion of a majority of the court, the owner of the note and mortgage, and that Miss Barnard must assign and deliver them to Mrs. Patch.

In determining whether the plaintiff is entitled to have credit for his payments of principal,* other facts are important. These payments were made after the note became due. The plaintiff had no actual knowledge of any assignment or transfer of the mortgage, or the note, and made all his payments upon his own supposition that the mortgagee still owned and held the note and mortgage. When the payments were made, the note was in the possession of the mortgagee, but the payments were made in

---

* After the note became due the plaintiff paid to the mortgagee $1,900 on account of the principal of the mortgage debt, and shortly thereafter the mortgagee absconded.

Chelsea, and the note was in the mortgagee's office in Boston ; and at none of the times of payment did the plaintiff see the note, nor was anything said to or by him about its ownership, nor did he ever receive any information or make any inquiry as to the ownership or possession of the note or mortgage until after he had made all the payments. The report finds that the mortgagee had no express authority to receive any portion of the principal, "and no authority except such as might be implied from their leaving the note with him," and "that the note was left with him for the purpose of enabling him to collect the interest, and for no other purpose." While authority to collect principal as well as interest might be implied from the fact that the owner of a note left it with an attorney at law, that inference cannot fairly be drawn when the other facts of the transaction are considered, and we must take it as a fact that Hutchinson had no authority to receive payments of principal.

It is conceded by the defendants, that the plaintiff is not charged with constructive notice of the recorded assignments. See *George* v. *Wood*, 9 Allen, 80. The plaintiff contends that the assignee of a note and mortgage must give notice of the assignment to the mortgagor to protect himself against future payments to the mortgagee. There is authority in decided cases for this doctrine ; but it is based upon the fact that the mortgages with which the courts were dealing were given to secure the payment of bonds or other non-negotiable evidences of debt. For instance, in *James* v. *Johnson*, 6 Johns. Ch. 417, 427, where it is said to be "an obvious principle of equity, that all dealings with the mortgagee, even in his character of mortgagee, before notice of the assignment, are valid," and in the other New York cases relied on by the counsel for Mrs. Patch the debt was evidenced by a bond. See also *Matthews* v. *Wallwyn*, 4 Ves. 118 ; *Williams* v. *Sorrell*, 4 Ves. 389. And so it was in *Emery* v. *Gordon*, 6 Stew. 447. In *Crane* v. *March*, 4 Pick. 131, 135, decided in 1826, it is said : "In the form usually practised in regard to mortgages, until lately, . . . the collateral personal security was a bond." But with the use of negotiable promissory notes as the personal obligation which the mortgage secures, a different element comes in. The obligation is to whoever under the law of negotiable paper may be entitled to exact payment of

the note, and the duty for the performance of which the mortgage is security is to pay according to the law of negotiable notes. In *National Bank of North America* v. *Kirby*, 108 Mass. 497, 502, notes secured by mortgage are said to be of the class whose value, due to their negotiable character, should not be impaired, and in *Morris* v. *Bacon*, 123 Mass. 58, it is treated as a familiar rule that the debt is the principal and the mortgage an incident. In *Strong* v. *Jackson*, 123 Mass. 60, 64, it was said : " As between the original parties, the note and mortgage are but one transaction, and but one security." In that transaction the mortgagor who gives his negotiable note, rather than a bond or some non-negotiable obligation, brings himself voluntarily within the rules which govern the payment of negotiable paper, and in effect agrees that he will be bound by them, and that the mortgage shall stand as security for the obligation that he will not only pay the note, but make effectual payment to the party entitled to claim under these rules. In determining who that party is, as in *Strong* v. *Jackson*, if there are different persons, each of whom has some show of title, legal or equitable, matters may be material which would not have weight in the case of purely mercantile paper ; but when the true owner has been ascertained, the question between him and the promisor whether payments made by the latter are effectual to reduce or discharge the debt must be decided, not by the law applicable to bonds or other non-negotiable securities, but by the law of negotiable paper.

Applying the doctrines of that law, a majority of the court is of opinion that the payments in question were made by the plaintiff at his own risk and peril, and he is not entitled to have them applied in reduction of the amount to be paid upon redeeming the mortgage. *Wheeler* v. *Guild*, 20 Pick. 545, 553. As there said, " Faith is given to the holder mainly on the ground of his possession of the bill, ready to be surrendered or delivered, and the actual surrender and delivery of it upon the payment or transfer. If therefore, upon such payment, the holder has not the actual possession of the bill ready to be delivered, and does not in fact surrender it, but gives a receipt or other evidence of the payment, and if it turns out that the party thus receiving had not a good right and lawful authority to receive and collect the money, but that another person had such right, the payment will not discharge the party paying, but

will be a payment in his own wrong; he must pay the bill again to the right owner."

In the case at bar, while the person to whom the payments were made had in a sense the possession of the note, the payments were made in one city while the note was in another, and it was never produced to the plaintiff, and never ready to be either surrendered or indorsed at the time and place of the plaintiff's payments. He was not induced to make them by the fact that the note was in the constructive possession of Hutchinson at another place, nor warranted in relying upon that fact as a justification of his payments.

The plaintiff further contends that, because the mortgagee to whom he paid was an attorney at law and an agent of the real owner of the note to collect the interest, the real owner is bound by the payments of the principal. If the plaintiff had been induced to make the payments of principal by the fact that the mortgagee was an attorney who was agent of the real owner of the note, and he had been ignorant of any limitation of the attorney's authority, we should be slow to hold that the payments would not bind the real owner. See *Donaldson* v. *Wilson*, 79 Mich. 181; *Emery* v. *Gordon*, 6 Stew. 447. But we need not consider that question, because it does not arise upon the facts. The plaintiff was unacquainted with the fact that the mortgagee was an agent of some owner of the note, and was not thereby induced to make the payments. He made them solely because he himself assumed, without inquiry and without any representations made, and without requiring the production of the note, that the mortgagee continued to be its holder and owner, and he dealt with him as owner, and not as an agent.

Nor can the plaintiff rely upon the doctrine that one who allows an undisclosed agent to appear and act as principal is not permitted afterwards to deny that he had full authority. The cases relied on by the plaintiff, like *Fish* v. *Kempton*, 7 C. B. 687, were where the agent had authority to sell, and when he was allowed to sell as a principal the legal consequences of such a sale must follow. But here the mortgagee as agent was given no authority or right to hold himself out as a principal, nor is it shown that he was allowed to do so by the real owner, who had no reason to suppose that the agent was acting outside of the authority given him.

It cannot be said that the owner of the note was negligent in leaving it with the mortgagee, who was an attorney at law and also engaged in another respectable business, and no reason is shown to have been known to her why she should distrust him. Nor is the case one where, if one of two innocent persons must suffer from the wrongful act of a third, the plaintiff should be relieved from the consequences of his payment to the wrong party. The owner of the note was not the cause of his making the payments, and did not induce him to make them ; but he acted solely upon his own supposition that the mortgagee was himself the owner of the note and mortgage.

The result is that, in the opinion of a majority of the court, the plaintiff is not shown upon the report to be entitled to have his payments on account of principal applied in reduction of the amount which he must pay to redeem. We have not all the data which are essential to the making of a final decree, and the case is sent back to the Superior Court for further proceedings, and that court is to enter a decree for redemption.

*So ordered.*