## CROSS *v.* CITIZENS BANK AND TRUST COMPANY.

1. The motion to dismiss the bill of exceptions is without merit.
2. It is provided by statute: "Whenever any person in this State conveys any real property by deed to secure any debt to any person loaning or advancing said vendor any money or to secure any other debt, and shall . . take an obligation binding the person to whom said property is conveyed to reconvey said property upon the payment of said debt or debts, such conveyance . . shall pass the title of said property to the vendee till the debt . . shall be fully paid, and shall be held by the courts of this State to be an absolute conveyance, with the right reserved by the vendor to have said property reconveyed to him upon the payment of the debt or debts intended to be secured agreeably to the terms of the contract, and not a mortgage." Civil Code (1910), § 3306. It has been held by this court that an absolute deed to secure a debt may be made without a bond to reconvey. *Jewell* v. *Walker*, 109 *Ga.* 241 (34 S. E. 337).
3. It is also provided by statute: "Every such deed *shall be recorded* in the county where the land conveyed lies. . . Such deeds . . remain valid against the persons executing them, but are postponed to

all liens created or obtained, or purchases made, prior to the actual record of the deed. . . If, however, the younger lien is created by contract, and the party receiving it has notice of the prior unrecorded deed, . . or if the purchaser has the like notice, then the title conveyed by the older deed . . shall be held good against them." Civil Code (1910), § 3307.

4. The foregoing was modified by the registration act of 1889 (Acts 1889, p. 106) which provided that such deeds "shall, as against the interests of third parties acting in good faith, and without notice, who may have acquired a transfer or lien binding the same property, take effect only from the time they are filed for record in the clerk's office. And the said clerk is required to keep a docket for such filing, showing the day and hour thereof, which docket shall be open for examination and inspection as other records of his office."

5. The foregoing statutes include protection, among others, for persons holding legal title to land as security for a debt, in virtue of a security deed as contemplated by the statutes, as against grantees or their successors from the same grantor; and in rivalry between such grantees, a security deed that is senior in point of execution and record charges notice of the conveyance and the debt it purports to secure, and is entitled to priority over a junior recorded deed.

6. The grantees named in a security deed to land, which had been given to secure a series of promissory notes and contained a power of sale, borrowed from a third person money for which they executed their promissory notes, and for the purpose of securing its payment executed a separate instrument which provided that "for and in consideration of the sum of one dollar in hand paid, the receipt whereof is hereby acknowledged, and in order to secure the payment of [the note which is fully described], we the undersigned . . hereby transfer, assign, and convey to [the lender, naming him] all our right, title, interest, and equity in and to [the security deed, describing it], and also assign and convey to [lender, naming him] all our rights, title, interest, and equity in and to the land described in said security deed and the promissory notes secured by same." The instrument was signed and attested as security deeds to land are required by law to be signed and attested to entitle them to be recorded. After execution the instrument was filed and recorded within the time and in the manner as provided by law for the filing and recording of statutory security deeds. *Held:*

(*a*) The instrument was in substance a security deed. As one transaction it conveyed both the land and the debt represented by the notes, the latter measuring the interest in the land taken by the grantee, thereby directly affecting the title to the land, and amounting to a substantial part of the conveyance.

(*b*) As a security deed to land the instrument was entitled to record.

(*c*) Appropriate record of the instrument charged subsequent purchasers from the makers of such instrument, purchasing both the land and notes as one transaction, with notice of the assignment of both land and notes. This ruling, though based on application of the statutes, is supported by the reasoning in Murphy v. Barnard, 162 Mass. 72 (38 N. E. 29, 44 Am. St. R. 340, 343-4); 3 R. C. L. 1067, § 272; Packwood v. Gridley, 39 Ill. 388 (5); 8 C. J. 518, § 730, note 61.

7. Applying the principles ruled in the preceding divisions, the rights of a purchaser of the land and notes from the same assignor, after record of the instrument quoted substantially in the sixth division, are inferior to the rights of the holder of the senior recorded assignment.

(a) A different question would arise if only the notes had been assigned.

(b) The case differs on its facts from *Gholston* v. *Northeastern Banking Co.*, 158 *Ga.* 291 (123 S. E. 111), and *Hardin* v. *Bank of Harlem*, 145 *Ga.* 494 (89 S. E. 613). Neither of these cases involved the question above ruled.

8. It is provided by statute: "The transfer of notes secured by a mortgage or otherwise conveys to the transferee the benefit of the security." Civil Code (1910), § 4276. See also *Carter* v. *Johnson*, 156 *Ga.* 207 (5) (119 S. E. 22), and cases cited; *Carlton* v. *Reeves*, 157 *Ga.* 602, 607 (122 S. E. 320). The foregoing refers to implied transmission of title to the security, but does not purport to exclude transmission by express written assignment of the notes and security, or to qualify the effect of such written assignment. The decision made in the seventh division does not contravene the above-quoted rule.

9. As the plaintiff bank was charged with notice of the senior transfer of the notes and of the land as security for the same, it was not an innocent purchaser; and consequently the case is not one for application of the principle stated in the Civil Code (1910), § 4537, which provides: "When one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury must bear the loss."

10. Under the special facts, Park's Civil Code, § 4496(a), relating to the limitation of actions to recover possession of personal property, has no application to the case. The facts do not show such adverse possession of the assigned notes and security as would establish a prescriptive title in the plaintiff bank under the provisions of the Civil Code (1910), § 4164, defining adverse possession, and § 4172, relating to prescriptive title to personalty based on adverse possession.

11. The assignments included also the power of sale expressed in the security deed which was assigned, and the holder of the senior assignment was entitled to exercise such power of sale.

12. It follows that in a suit between the assignees the judge erred in granting a temporary injunction, restraining the senior assignee from exercising the power of sale, on the ground that the junior assignee was entitled to such security.

No. 4477. June 19, 1925. Rehearing denied July 18, 1925.

Injunction. Before Judge Custer. Baker superior court. July 5, 1924.

On May 13, 1919, Watson and Stapleton obtained a loan of $4000 from C. H. Cross, for which they gave their promissory note. As collateral security for payment of the note they delivered to Cross five promissory notes aggregating $7629.23, secured by a security deed to land in Miller County, which contained a power of sale, and which had been executed to them by J. T. Bowen.

At the time of delivery of the papers there was no indorsement or entry on any of the collaterals transferring the interest of Watson and Stapleton to Cross, but they executed a separate paper which stated a consideration of one dollar "in hand paid," and that the instrument was made for the purpose of securing the note to Cross, and purported to convey to Cross all the right, title, and interest of the transferors in and to the security deed and all of their "right, title, interest, and equity in and to the land described in said security deed and the promissory notes secured by same." This transfer was witnessed as a deed or mortgage to land is required to be witnessed, and was recorded in the county where the land was situated on May 19, 1919. After receiving the collaterals Cross placed them for safe-keeping in the First National Bank of Colquitt, Georgia. On April 19, 1920, Watson and Stapleton indorsed in blank four of the notes aggregating $7000, which had not then matured; and delivered them to the Citizens Bank and Trust Company of Bainbridge, Georgia, as additional collateral security for a loan that day made to them, as evidenced by their note of even date for $10,000, to that bank; and at the same time and as a part of the same transaction delivered the security deed from Bowen to themselves, on which they entered a written transfer of the instrument and all of their interest in the secured debt and the land described in the deed, and assigned the right to exercise the power of sale contained in the deed, and made physical delivery of each of the collaterals to the Citizens Bank and Trust Company. These transfers were without the knowledge or consent of Cross, and after learning of the transaction he demanded the collaterals from the transferee bank, and his demand was refused. On May 14, 1924, Cross as assignee proceeded to advertise the land for sale under exercise of the power of sale expressed in the Bowen deed, for the purpose of realizing the balance due on the $4000 note from Watson and Stapleton to him. On application of the Citizens Bank and Trust Company of Bainbridge, at an interlocutory hearing at which the pleadings and uncontradicted evidence made a case as stated above, the judge granted a temporary injunction restraining Cross from further proceeding to exercise the power of sale. The defendant excepted.

*P. D. Rich,* for plaintiff in error.    *J. C. Hale,* contra.

ATKINSON, J.    A decision was rendered by this Court on June

19, 1925, reversing the judgment of the trial court. On motion for rehearing the former opinion of the court is withdrawn, and the opinion now delivered is substituted. The notes do not require elaboration further than is here stated. The reasoning of the Supreme Court of Massachusetts in Murphy *v.* Barnard, cited in syllabus 6, subdivision (c), follows: "The report shows that Miss Barnard bought in good faith and without actual notice. But her purchase was not the purchase of negotiable paper simpliciter. While the title of one who buys ordinary commercial paper in good faith and before its maturity is not vitiated by the fact that there were suspicious circumstances which might have put him upon inquiry (Smith *v.* Livingston, 111 Mass. 342, and Freeman's Nat. Bank *v.* Savery, 127 Mass. 75, 34 Am. Rep. 345), there is a distinction between the purchase of such paper and that of notes known to be secured by mortgage of real estate, although bought as negotiable paper. Strong *v.* Jackson, 123 Mass. 60, 25 Am. Rep. 19. The effect of the distinction is that subsequently acquired rights in mortgage notes will not be allowed to supplant rights previously acquired, if all the facts taken together, and including the means of knowledge and any circumstances which should lead to inquiry, show that such a result would be inequitable. If Miss Barnard's rights as against Mrs. Patch were to be settled on this basis, the fact that Miss Barnard saw the insurance policy on which the assignment to Mrs. Patch was indorsed would be of some importance. But her title is not to be so settled. She did not buy a mortgage note only, but the mortgage also. And when the transaction is in terms the purchase of a mortgage, as both a debt and a conditional estate in land, the distinction becomes decisive, because of the doctrine that the purchaser of a mortgage is charged by statute with constructive notice of the state of the record title, when, as in the present case, the record discloses not only a want of title in his vendor, but the fact that the title to the mortgage was in the person who now claims adversely to the purchaser. One who purchases under such circumstances is not a purchaser without notice, but with constructive notice of the want of title of his vendor. In the present case Miss Barnard knew that in buying the note she was buying a mortgage, and in determining her rights as against those of the real owner of both note and mortgage she is to be charged with knowledge of the

facts of which as purchaser of the mortgage she had constructive notice, namely, that the note and mortgage had been sold by her vendor to Mrs. Patch on January 14, 1888, and that Mrs. Patch continued to be the record owner of the mortgage. Miss Barnard therefore was not a purchaser without notice, but with a constructive notice of an infirmity in the title of her vendor; and as he had in fact no title, she took none as against the owner." The pertinent statement in Packwood v. Gridley, 39 Ill. 388, follows: "The sale of the notes and the deed of the land to him were all one transaction, and he must be held to notice in regard to the notes of whatever the records brought to his knowledge in regard to the title of the land."

*Judgment reversed. All the Justices concur.*