A06A1949. PALMETTO CAPITAL CORPORATION v. SMITH
et al.
(645 SE2d 9)

MIKELL, Judge.

Palmetto Capital Corporation ("Palmetto") appeals from a grant of summary judgment to Michael and Shirley Smith ("the Smiths") in the wake of Palmetto's suit to enforce a security interest, including a right to foreclose, in real property located in Newnan. Because the collateral assignment granting Palmetto the security interest and its power to foreclose is enforceable, and because the Smiths took possession of the property with notice of that power, we reverse.

As the parties stipulated in the trial court, the relevant facts are undisputed. In February 1998, Palmetto lent $200,000 to Café Franco Wholesale, Inc. ("Franco"), in exchange for the latter's promissory note for that amount and a security deed in the Newnan property. Palmetto recorded the Franco deed shortly thereafter in Coweta County. In July 1998, Franco filed for bankruptcy in federal court. In October 1998, with Franco now in default on its note, TravelBank, Inc. ("TravelBank"), agreed to bring the Franco note current in exchange for Palmetto's absolute assignment of the Franco note and the security deed to TravelBank. TravelBank financed its purchase of the loan through a new note to Palmetto, which was secured through a collateral assignment of the Franco note and security deed back to Palmetto. Palmetto retained both notes and recorded both assignments in Coweta County. TravelBank made payments to Palmetto under the new note until May 2004.

In May 1999, however, TravelBank recorded three deeds concerning transactions occurring earlier that year. The first was a deed under power of sale reciting that TravelBank had sold the property from Franco to itself. The second was a warranty deed reciting that TravelBank had sold the property to VEEU Corporation ("VEEU") for $525,000. The third was a security deed in which VEEU transferred the property to TravelBank as security for a loan of $500,000. In August 1999, moreover, VEEU apparently executed a deed to secure

debt and a security agreement conveying the property to Boca Raton First National Bank ("the Bank") in exchange for a loan of $1,015,000. VEEU then vanished, along with the money.

In February 2001, the Bank's successor in interest foreclosed on the property under the VEEU deed and sold it to Carl T. and Suzanne M. Pugh a few months later. Two years later, in May 2003, the Pughs sold the property to the Smiths. In September 2004, Palmetto's counsel gave the Smiths notice of default on the Franco note and initiated foreclosure proceedings. When the Smiths protested that they purchased the property in good faith without knowledge of Palmetto's interest, Palmetto withdrew the property from foreclosure and brought this action for declaratory relief concerning its security interest in the property. After the Smiths answered and counterclaimed to clear title, both parties moved for summary judgment, which the trial court granted to the Smiths without explanation. Palmetto appealed to the Supreme Court of Georgia, which transferred the case to this Court.

The question before us is whether the trial court erred in granting summary judgment to the Smiths on the ground that the Franco security deed eventually held by Palmetto is not a valid encumbrance against the property. Palmetto cites *Cross v. Citizens Bank and Trust Co.*,[1] last cited by a Georgia court in 1935, and *Owens v. Conyers*,[2] last cited in 1950, for its argument that under the collateral assignment, it acquired not only the Franco deed, but also legal title in and the power of sale over the property. The Smiths cite our relatively recent decision in *Chen v. Profit Sharing Plan of Bohne*[3] for their argument that the title received in descent from an absolute assignment of the security deed is superior to any derived from the collateral assignment.

It is true that precedents predating Georgia's adoption of the Uniform Commercial Code in 1962 "raise[ ] a red flag"[4] in any case involving commercial paper. This does not mean, however, that longstanding precedent defending the assignability of powers of sale in realty are in conflict with those enforcing UCC rules on such paper. The collateral assignment at issue here recites that "[TravelBank] hereby pledges, transfers, assigns, conveys and delivers to [Palmetto], and grants to [Palmetto] a security interest in, all right, title and interest of [TravelBank] in and to" the original Franco note and

---

[1] 160 Ga. 647 (128 SE 898) (1925).

[2] 189 Ga. 793 (7 SE2d 675) (1940).

[3] 216 Ga. App. 878, 881 (1) (456 SE2d 237) (1995).

[4] *Tifton Bank & Trust Co. v. Knight's Furniture Co.*, 215 Ga. App. 471, 472 (1) (a) (452 SE2d 219) (1994).

security deed, and transfers "all rights, powers, and privileges of [TravelBank] arising under the Note or Security Deed" back to Palmetto.

Even if we agree with the Smiths that the collateral assignment is a species of commercial paper subject to the UCC, it does not follow that TravelBank's transfer of the power of sale to Palmetto was either void or ineffective under Georgia real property law. TravelBank is the common grantor at the origin of the competing lines of title here. Under both *Cross* and *Owens*, TravelBank's collateral assignment not only granted Palmetto the right to the income stream promised by TravelBank under its new note, but also granted Palmetto the right to foreclose on the property securing that income stream when payment was not made.[5] Palmetto never abandoned its claim to either payments under the TravelBank note or the collateral securing it, including the Franco security deed. Only years after the series of apparently fraudulent transactions culminating in the Bank's loan of over $1 million to VEEU did TravelBank finally default on its payments — by which time, of course, the Smiths had obtained possession of the property.[6]

The only question remaining, then, is whether the Smiths should be held to have had notice of Palmetto's rights under the collateral assignment. The Supreme Court of Georgia held in *Cross* that "subsequently acquired rights in mortgage notes will not be allowed to supplant rights previously acquired, if all the facts taken together, and including the means of knowledge and any circumstances which should lead to inquiry, show that such a result would be inequitable."[7] And it is a matter of statute that "[n]otice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led. Ignorance of a fact due to negligence shall be equivalent to knowledge in fixing the rights of parties."[8]

Here, it is undisputed that the collateral assignment was properly recorded. Since the Smiths are presumed thereby to have purchased the property with knowledge of Palmetto's power to foreclose under the collateral assignment, they are not bona fide purchasers for

---

[5] See *Cross*, supra at 648 (6) (a) (purchaser of notes and mortgage obtains "both the land and the debt represented by the notes, the latter measuring the interest in the land taken by the grantee, thereby directly affecting the title to the land"); *Owens*, supra at 795 (1) (collateral assignment gave assignee "all the rights, interests, and powers which the assignor had") (citation omitted).

[6] By contrast, we reversed the trial court's grant of summary judgment to the creditor investor in *Chen* not because the creditor's claim secured by realty was invalid, but because its letter to the debtor did not comply with the UCC's notice requirements. *Chen*, supra at 881 (1).

[7] *Cross*, supra at 651.

[8] OCGA § 23-1-17.

value without notice.[9] We also reject the Smiths' contention that Palmetto is somehow estopped from foreclosing by TravelBank's apparent authority under the absolute assignment to collect the Franco note. "There can be no estoppel by conduct where both parties have equal knowledge or equal means of knowing the truth."[10] Once Palmetto had recorded the collateral assignment, it had no further duty to reveal its security interest to subsequent purchasers.[11] Thus Palmetto's security interest, including legal title and the power to foreclose, takes priority over the rights of the Smiths, who procured their title after, and subject to, that interest.

The trial court erred when it granted summary judgment to the Smiths and when it failed to grant summary judgment to Palmetto.

*Judgment reversed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 14, 2007 —
RECONSIDERATION DENIED APRIL 10, 2007 — 

*Ellenberg, Ogier & Rothschild, William L. Rothschild,* for appellant.

*Heyman & Sizemore, William B. Brown, Jacqueline Marcucci,* for appellees.

---

[9] See *Cross,* supra at 651 ("the purchaser of a mortgage is charged by statute with constructive notice of the state of the record title" when the record shows that title was in the adverse party); *Bacote v. Wyckoff,* 251 Ga. 862, 866 (2) (310 SE2d 520) (1984) (bona fide purchaser who fails to inquire as to rights of party in possession of premises may not prevail).

[10] (Citation omitted.) *Tybrisa Co. v. Tybeeland,* 220 Ga. 442, 446 (139 SE2d 302) (1964).

[11] Id. (reversing injunction to enjoin foreclosure by grantee holder of security deed, who had no duty to inform grantor borrower of his powers thereunder).