PADLEY, *Appellant*, v. NEILL *et al.*

### Division One, May 26, 1896.

1. **Mortgage**: BOND: PAYMENT: NOTICE. A farm loan was negotiated through a loan company, the mortgage and bond, however, running to an individual, and both bond and interest having an assignment by the payee in blank indorsed thereon when they were executed. The coupons also contained a recital that they were guaranteed by the company. Both bond and coupons were payable at a bank in New York, but when each coupon matured a notice was sent to the maker by the company and all coupons were paid by remittances to such company, from which the canceled coupons were after due time received. When the bond and the last coupon became due, a notice was received by the maker from a successor of the loan company, and the maker sent the sum due to such new company, which diverted the money to its own use and became insolvent. The owner of the bond and mortgage who obtained it through a broker soon after its execution had no business connections with the loan company, but had received her interest at the bank at which it was payable. *Held*, that the maker was chargeable with notice that the loan company did not own the bond and mortgage, and sent the money to it at her own risk.

2. ———: FORECLOSURE: CROSS BILL: PARTY. Where, as in the foregoing case, a wife commenced an action to cancel a mortgage on her property, a foreclosure may be decreed on a cross bill though her husband is not made a party.

*Appeal from Bates Circuit Court.*—T. J. SMITH, ESQ., Special Judge.

AFFIRMED.

*Graves & Clark* for appellant.

(1) *First.* The bond and coupons, calling as they do for an attorney's fee, are nonnegotiable instru-

ments, under the decisions of this state.  *Bank v. Gay*,
63 Mo. 33; *Sannstag v. Conley*, 63 Mo. 476; *Bank v.
Marlow*, 71 Mo. 618; *Bank v. Gay*, 71 Mo. 627; *Bank
v. Jacobs*, 73 Mo. 35; *McCoy v. Green*, 83 Mo. 633;
*Hope v. Barker*, 112 Mo. 338.   *Second.*   It is not con-
tended that the payor and maker of the note had any
notice of the assignment until long after payment.
Under these facts the payment to the company, the
original payee and assignor, was a payment of the note,
and good against the assignee, Mrs. Shaver.   To have
precluded this equity pleaded in plaintiff's petition,
the assignee, Mrs. Shaver, should have notified the
maker, Mrs. Padley, of her assignment.   R. S. 1889,
sec. 8161; *Bartlett v. Eddy*, 49 Mo. App. 32.   (2)
*First.*   The testimony of L. H. Perkins shows that the
company at Denver was the same business concern as
the original company at Lawrence, Kansas.   It was its
legal successor and was not in the relation of assignor,
and assignee.   A payment to this legal successor was
the same as a payment to this first company, just as
the payment to an administrator is the same as pay-
ment to the deceased.   This needs no citation of
authority.   *Second.*   If this be true, then the court
erred in not permitting us to show that W. J. Neill had
no actual interest in the note or bond, but on the con-
trary, that it was made and delivered to the company.
(3)   *First.*   The court erred in refusing to allow plain-
tiff to prove by L. H. Perkins that these companies
acted for the holders of paper, and as their agent in
the collection of principal and interest.   Perkins was
not the agent, and if he knew for whom the company
did act, it was proper for him to so state.   Mechem on
Agency, sec. 102.   *Second.*   But, even if it be con-
tended that Perkins was an officer of the company,
claimed to be acting as agent, yet the agent himself

may testify to the fact of agency, as can any other individual. The trial court took another view and excluded this testimony which was error very materially injuring the plaintiff's cause. *Cape Girardeau v. Fisher*, 61 Mo. App. 509; *Howe Machine Co. v. Clark*, 15 Kan. 492; Mechem on Agency, sec. 102. *Third.* Not only can the agent testify as to his agency, but on the contrary he can testify against that issue. *Dowell v. Williams*, 33 Kan. 319. (4) The court erred in overruling plaintiff's motion to strike out the second count of defendant's answer. This second count is in the nature of a bill to foreclose a mortgage or deed of trust. It shows upon its face that Wm. Padley was a party to the instrument, and not a party to the action. If foreclosure is sought all the parties interested should be in court. *Whitney v. Higgins*, 70 Am. Dec. 748; *Eslava v. Lepretree*, 56 Am. Dec. 266. (5) It was competent to show that the company, which plaintiff claims was the agent of Mrs. Shaver, was insolvent as plaintiff offered to do in question 132 in the deposition of L. H. Perkins, but which testimony was excluded by the court. It was competent to show this as testimony to discredit Mrs. Shaver's testimony, where she disclaims the agency of the company. The fact that the agent was in such financial condition as not to be responsible to the principal might influence the principal in denying the agency, so as to hold some third party. (6) The conduct of the defendant Shaver, in not notifying the maker of the bond and mortgage that the bond and mortgage had been assigned, and permitting the payment of interest for five years to the company, was such as to establish the belief in the mind of the maker, that payment to the company was proper, and defendant is now estopped from asserting the contrary. *Lumber Co. v. Kreeger*, 52 Mo. App. 418.

*Francisco Bros.* and *Reed & Reed* for respondent, Shaver.

(1) The makers had ample notice of assignment. (2) The several corporations were purchasers. (3) The Colorado corporation was not Mrs. Shaver's agent. "It is well established law that the authority of an agent to collect interest on a mortgage does not authorize him to collect the principal." *Doubleday v. Kress,* 50 N. Y. 410; *Smith v. Kidd,* 68 N. Y. 130; *Brewster v. Karnes,* 103 N. Y. 556. Mechem on Agency, sec. 379. *Williams v. Walker,* 2 Sandf. 325; *Fisher v. Lodge,* 15 Iowa, 459; *Draper v. Rice,* 46 Iowa, 797. (4) "Authority of an agent to receive interest and principal on a mortgage can not be inferred from the fact that the agent had collected and paid over to the mortgagee interest on other mortgages." 1 Jones on Mortgages, sec. 964; *Cox v. Cutter,* 28 N. J. Eq. 13; *Smith v. Kidd,* 68 N. Y. 130. (5) "Even authority to collect the interest upon a mortgage does not afford ground for inferring authority to collect principal, especially where the agent is not intrusted with the possession of the securities." 1 Jones on Mortgages, sec. 964; *Williams v. Walker,* 2 Sandf. (N. Y. Ch.) 325; *Smith v. Kidd,* 68 N. Y. 130; *Brewster v. Karnes,* 103 N. Y. 556. (6) "The possession of the security by the agent in the absence of proof *aliunde* of express authority is the indispensable evidence of his authority to collect the principal." *Smith v. Kidd,* 68 N. Y. 130; *Williams v. Walker,* 2 Sandf. 325; *Smith v. Hall,* 19 Ill. App. 17; *Tappan v. Morsman,* 18 Iowa, 500. (7) In the case last above cited Judge DILLON says: "So that it may be laid down as a general rule that if a debtor owing money on a written security pays it to or settles with another as an agent, it is his duty at his peril to see that the person thus paid or settled with is in pos-

session of the security. If not thus in possession the debtor must show that the person to whom he pays, or with whom he settles, has special authority or has been represented by the creditor to have such authority, although for some reason not in possession of the security." Those propositions are fully indorsed in the following recent decisions: *Klindt v. Higgins*, 64 N. W. Rep. 414; *Bronson v. Ashlock*, 41 Pac. Rep. (Kan.) 1068; *Keohane v. Smith*, 97 Ill. 156; *Biggerstaff v. Marston*, 161 Mass. 101; *Watson v. Wyman*, 161 Mass. 96; *Mulcahy v. Fenwick*, 161 Mass. 164; *Lee v. Clark*, 89 Mo. 553; *Murphy v. Bernard*, 162 Mass. 72; *Bank v. Chilson*, 63 N. W. Rep. 362. (8) Mrs. Shaver was the absolute owner of this bond long prior to the formation of either the Western Farm Mortgage Trust Company, of Kansas, or the Colorado corporation. "A payment to a person simulating a creditor will not bar the recovery of the debt by the real creditor." *People v. Smith*, 43 Ill. 219.

BRACE, P. J.—In December, 1886, the plaintiff Mary E. Padley with her husband executed the following instrument of writing:

"UNITED STATES OF AMERICA.

"No. 6609. . . . . . . . . . . . . $1,200.00.

"REAL ESTATE MORTGAGE COUPON BOND.

"Secured by first mortgage. 7 per cent semiannually.

"*Know all men by these presents*, That the undersigned, of the county of Bates and state of Missouri, do, for value received, hereby acknowledge ourselves indebted, and by these presents promise to pay to the order of W. J. Neill, the principal sum of twelve

hundred dollars, in lawful money of the United States of America, at the Third National Bank in the city of New York, on the 1st day of December, A. D. one thousand, eight hundred and ninety-one, with interest thereon at the rate of seven per cent · per annum from date, payable semiannually on the first days of June and December in each year until said principal sum shall be fully paid according to the tenor and effect of ten interest notes of forty-two dollars each, and bearing even date herewith, hereto annexed, payable at said National Bank in the city of New York, provided that principal sum and interest thereon be paid at maturity, but in case of default and election as hereinafter provided, then it is expressly agreed that this bond shall bear interest at the rate of ten per cent per annum from date and if suit be instituted for the collection hereof a reasonable sum shall be added as attorney's fees. It is agreed that every installment of interest, evidenced by coupon hereto annexed, not paid at maturity, shall draw interest at the rate of ten per cent per annum until paid.   It is further expressly agreed that in case of default in the payment of any installments of interest or any portion thereof for the space of ten days after it becomes due and payable, or in case of the breach of any of the covenants or conditions in the mortgage deed securing this bond contained to which said deed reference is hereby made and which is made a part of this contract, in either such case the said principal sum with all accured interest shall at the election of the legal holder or holders hereof at once become due and payable without further notice, and may be demanded and collected, anything herein contained to the contrary, notwithstanding.   All appraisement, homestead, exemption and stay laws are hereby expressly waived.   It is further expressly agreed and declared

that this bond and the interest notes hereto annexed are made and executed under and are in all respects to be governed and construed by the laws of the state of Missouri, and are given for an actual loan of twelve hundred dollars, said loan being secured by trust deed on real estate duly recorded.

"In witness whereof, we have hereunto affixed our hands and seals and made delivery hereof at Lawrence, Kansas, this 1st day of December, A. D. 1886.

"MARY E. PADLEY.    [SEAL]

"WM. PADLEY."    [SEAL]

The bond was indorsed as follows:

"No. 6609.                                              $1,200.00

"Wm. Padley and wife to W. J. Neill, dated Dec. 1st, 1886, due Dec. 1st, 1891, interest due, on the first days of June and December.

"Principal and interest payable at the Third National Bank in New York City, negotiable by the Western Farm Mortgage Company, Lawrence, Kansas.

"For value received, I hereby assign and transfer the within bond, together with all my rights, title, and interest in the trust deed securing the same, to Mrs. M. A. Shaver, of Troy, N. Y.

"W. J. NEILL."

The ten interest coupon notes were all in the same form and were all paid at maturity except the tenth, which is as follows:

"$42.00.      "LAWRENCE, KANSAS, Dec. 1, A. D. 1886.

"On the first day of Dec., A. D. 1891, without grace, for value received, we promise to pay to the order of W. J. Neill, the sum of $42.00 at the Third National Bank in the city of New York. If not paid at maturity, this coupon shall draw interest at the rate of ten per cent per annum. And it is expressly agreed that if suit be brought for the collection hereof, a reasonable sum be added as attorney's fees. This coupon is for

six months interest due at the maturity hereof on $1,200.00 loaned as appeared by bond No. 6609.

"Guaranteed by the Western Farm Mortgage Company.

"MARY E. PADLEY,
"WM. PADLEY."

The interest coupons were indorsed thus: "Pay to order of W. J. NEILL."

By the deed of trust referred to in the bond and made a part of the contract and bearing the same date and signed in the same manner, the said Mary E. Padley and husband conveyed to Lucius H. Perkins of Lawrence, Kansas, one hundred and twenty acres of land in Bates county, Missouri, of which the said Mary E. Padley was the owner, in trust, to secure the payment of said bond and interest coupon notes, with power of sale, etc. This deed of trust was duly acknowledged by the said Mary E. and her husband the said William Padley on the fourteenth of December and filed for record on the thirty-first day of December, 1886, and duly recorded among the land records of Bates county, Missouri.

On the fifth day of December, 1893, the said Mary E. Padley instituted this action against the said W. J. Neill, Lucius Perkins, The Western Farm Mortgage Company, and The Western Farm Mortgage Trust Company of the state of Kansas, The Western Farm Mortgage Trust Company of the state of Colorado, Margaret A. Shaver and N. Lansing, alleging in her petition, in substance, after reciting the facts of the transaction, that the said bond and ten interest coupons to secure the payment of which said deed of trust was executed, have been fully paid off and discharged, and praying the court to so declare, and that the deed of trust be decreed to be satisfied, canceled, and for naught held, and for general relief. The defendants

being all nonresidents of the state, were served by publication and all made default except Margaret A. Shaver, who answered.

Denying the other allegations of the petition, she admitted, that the said Mary E. Padley is the owner of the real estate described in the petition and deed of trust aforesaid, and alleged in substance that she and her said husband for a valuable consideration executed and delivered the said bond, interest notes, and deed of trust to the said Neill, and that immediately thereafter and before the maturity of said bond the said Neill for a valuable consideration sold, assigned, and delivered said bond, interest notes, and deed of trust to the said defendant Margaret A. Shaver, and that ever since she has been, and is now, the owner, and holder thereof; that the plaintiff and William Padley are indebted to her on account thereof in the sum of $1,200 and interest and for a reasonable attorney's fee for the collection thereof, and prays judgment against the said Padley therefor; that said trust deed be foreclosed, that said real estate be sold and the proceeds applied to the payment of said indebtedness.

After a motion to strike out the plea for affirmative relief was overruled, issue was joined by reply, and the case submitted to the court on the evidence.

The court found the issues for the defendant; that the sum of $1,472.25 remains due and unpaid on account of said indebtedness, decreed the foreclosure of said deed of trust and the sale of the real estate to satisfy the same. From which decree the plaintiff appeals.

As this is a proceeding in equity, in which we review the evidence, it will not be necessary to pass upon the objections of the appellant to the rulings of the trial court upon the admission and rejection of

evidence, as we can perform that office for ourselves, all the material evidence being in the record.

It appears from the evidence that at the time these securities were executed, The Western Farm Mortgage Company, a corporation existing under the laws of the state of Kansas, was engaged at the city of Lawrence in that state, in the business of making loans upon real estate in the west, and selling the securities to eastern investors; that the plaintiff and her husband were citizens of Bates county, Missouri, and that one J. M. Cotterlin was engaged, at the city of Butler in said county, in the real estate and loan business; that the plaintiff being desirous of raising money on her land in said county, by her husband acting as her agent, and who conducted the whole of this business for her through the said Cotterlin, applied to Cotterlin for a loan of $1,200, which he obtained for her from the said mortgage company, upon execution of the instruments hereinbefore set out, and referred to, and ten other notes for $12 each payable to the said Western Farm Mortgage Company of even date and tenor with the ten interest coupon notes aforesaid, secured by a second mortgage on the same land, which for convenience may be called commission notes. These papers were prepared in the office of the mortgage company at Lawrence, sent to Cotterlin at Butler, executed there by the Padleys and returned to the mortgage company.

The bond and coupon interest notes aforesaid indorsed in blank by Neill, one of their employees, in whose name they had been drawn, but who had no beneficial interest in the transaction, were then forwarded to their general financial agent at Albany, New York, and by him transmitted to a broker at Lansingburg, New York, for sale, from whom they were purchased by the defendant, Mrs. Shaver, who resided at Troy in that state, about the first of January, 1887, and

to whom they were then for value delivered. There-
after she forwarded the coupon interest notes, through
her agent, for collection to the Third National Bank of
New York City as they fell due, where the mortgage
company kept an account with an arrangement that
coupons of this character, according to a list to be
furnished by the company, were to be paid on presen-
tation and charged to its account, and where they were
promptly paid until nine of them had been taken up.
The bond and the tenth coupon not being paid at their
maturity, but remaining in her hands due and unpaid
at the institution of this suit, were set up and filed with
her answer and made the basis of her cross action.

About thirty days before the first of the commission
notes (which were retained by the mortgage company)
and the first of the coupon interest notes which were in
the hands of Mrs. Shaver, became due, the mortgage
company sent a notice to the plaintiff in the following
form:

"Your installment of interest as per statement
below will be due in New York ————— 18—, and
should be paid in our hands at least ten days before, to
enable us to get it to New York on time. Pay promptly
to save expenses and trouble, for if the money is not in
New York to pay the coupons on the first, when pre-
sented, the coupon is dishonored and costs and penalties
are added and the whole debt may become due and the
mortgage may be foreclosed at once,"—stating the
amount of interest, and when due, with directions to
remit by draft on New York payable to the order of the
mortgage company.

Thereupon, as directed, the plaintiff remitted the
amount, $54, to the mortgage company at Lawrence,
Kansas, who sent her a receipt for the same and there-
after when the interest coupon for $42 was paid by the
Third National Bank of New York and returned to the

mortgage company, they transmitted the same to the plaintiff, and thus the business was transacted and the interest paid until the first four coupons were taken up.

The fifth fell due on the first of December, 1889. Before that date another corporation was organized under the laws of Kansas by the name of the Western Farm Mortgage Trust Company, to which the assets and business of the former corporation had been transferred, and, thereafter, the notices were given and the interest paid, and the business conducted in the same manner by the latter company in its name at Lawrence, Kansas, until the next five coupons had been taken up.

The bond and the tenth and last interest coupon fell due December 1, 1891. . Before that date another corporation was organized under the laws of the state of Colorado, by the name of the Western Mortgage Trust Company, at Denver, in that state, to which the assets and business of the Kansas corporation had been transferred.

From this company Mr. Padley received a notice in regard to the maturing of the tenth coupon in the same form as those previously received from the former companies dated, "Denver, Colorado, Oct. 20, 1891," and a few days thereafter he received the following letter from the same company:

"DENVER, COLO., October 26, 1891.
"*W. Padley, Esq., Butler, Mo.*

"DEAR SIR:—Your loan, No. 6609—$1,200, will be due December 1st. Will you be prepared to pay the same when due, or will you prefer to renew with this company for another five years? In case you decide to do the latter, we can save you some in the line of expenses. No extension can be allowed; and the loan must be either paid off entirely when due, or renewed for another five years.

"Kindly advise us which you prefer to do in this case, so that we may make our arrangements accordingly.                    Very truly yours,

"F. M. PERKINS,

"Secretary."

On or about the first day of December, 1891, the Padleys, having borrowed of Cotterlin the money for that purpose, caused him to forward to the Colorado company the sum of $1,254, the aggregate amount of the bond, the last interest coupon note, and. the last commission note, to be applied to the payment of the same, which amount was received by said company, converted to its own use, and no part thereof applied to the payment of said bond, and last interest coupon note.

Thereafter said company, being insolvent, went into the hands of a receiver, and nothing has or can be recovered from it, and the question in the case is, which of these parties should bear the loss sustained through its defalcation.

For the appellant it is contended that the loss must fall on Mrs. Shaver for two reasons: *First.* Because the bond, and interest coupon note, are non-negotiable instruments, and Mrs. Shaver did not notify the Padleys prior to the payment of the money as aforesaid to the Western Farm Mortgage Trust Company of Colorado, that she was the assignee and holder of their securities: and, *second,* because the said company was the agent of Mrs. Shaver, authorized to receive the payment of said obligations; and payment to it was payment to her.

For support of the first contention reliance is placed upon section 8161, Revised Statutes, 1889, which provides that "in actions on assigned accounts and nonnegotiable instruments, the defendant shall

be allowed every just set-off or other defense which existed in his favor at the time of his being notified of such assignment.''

Under the circumstances of this case, it is not seen how the payment to the Colorado company can avail the appellant as a defense under this statute to the action upon the instruments in this suit. The payment to that company was not payment to Neill, the payee and assignor thereof, unless that company was the holder of these instruments, at the time of the payment; for it is conceded that at the time they were executed Neill's assignment in blank was already indorsed thereon, and when the makers delivered their obligations to the Western Farm Mortgage Company of Lawrence, Kansas, and received the money on them, they knew that company was the holder of these instruments by assignment from the payee in blank with power to insert its name in the blanks as assignee or to transfer the same by delivery to another with like power, and thereafter, when the same fell due, it became their duty to make payment to the legal owner and holder thereof under such assignment, whoever he might be at the time they fell due, notice of such assignment having been given on the face of the papers cotemporaneously with their execution.

At that time Mrs. Shaver was the legal owner and had been ever since she purchased them as aforesaid. How then can a payment not made to her, to her assignor or to her assignee, but to a stranger, who was neither the owner, holder, assignor, or assignee thereof, be a payment of such obligations?

It would seem that the only ground upon which plaintiffs' contention could be maintained would be by showing that the Colorado company was at the time of the payment the agent of Mrs. Shaver, duly authorized to receive the same, or that she had by her conduct

estopped herself from denying that it was her agent for that purpose.

A very strenuous effort was made by the appellant to make such a showing, but in this she utterly failed. Under the most favorable consideration of the evidence admitted and offered that can be given, it fails to show any authority whatever in the Colorado company or either of its predecessors to act for her in regard to this business; she never intrusted these instruments or any of them, to either of these companies at any time for any purpose after she became the owner of them; she had no communication with either of them in regard to this business, and knew nothing about their connection with these papers except what appeared upon the face thereof, and all that appeared upon their face, was that the bond was negotiable by the Western Farm Mortgage Company and that the payment of the interest coupons was "guaranteed by the Western Farm Mortgage Company." With it or either of its successors, or the Padleys, she never had any dealing in regard to these securities, after she purchased them, except in accordance with the terms of the contract to present her coupons, as they fell due at the Third National Bank of New York, and receive payment. By what arrangement they were paid by that bank, she neither knew nor had occasion to inquire; she never gave any authority to either of these companies to act for her in the premises or by any act or word of hers clothed them with apparent authority to so act, and upon no principle of law or equity can she be made responsible for the acts or faults of either of them.

On the other hand the misappropriation by the Colorado company of appellants' money which she intrusted to that company, and intended to be applied to the payment of these securities, was the direct result of the misplaced confidence of her agents in that com-

pany. They were advised from the beginning that these securities had been assigned. They were advised by the course of business in the payment of each of the nine coupons they paid, and the indorsements on the back of each that the money was not being paid to the Kansas companies, at the Third National Bank of New York, but *by those companies* through that bank *to some third person* who until payment was the holder thereof, and through other correspondence that upon payment these companies could not release the mortgage, but would have to procure such release from another; and, finally, without knowing or making any inquiry as to whether the Colorado company was the holder of these securities, without having had any previous dealings with that company, but simply upon its notice that these securities were about to fall due, they remitted them the money to pay them, in the blind confidence that as former payments had reached their proper destination when remitted to the Kansas companies, so this one would, when remitted to the Colorado company.

It is useless to inquire particularly into the grounds of such confidence; whether reasonable or otherwise, they were not furnished by any conduct of Mrs. Shaver, and the consequence of such misplaced confidence can not be visited upon her; but must fall on the appellant, whose confidence the company betrayed.

It is further contended that the decree should be reversed because William Padley was not made a party to the suit. It is true that he was a proper party to the suit, but this suit was brought by Mrs. Padley in her own name without joining her husband as she may now do under our statute, so that he was not a necessary party to the suit. Against this action of Mrs. Padley, the defendant only sought relief. She asked none against Mr. Padley and the court gave her none. Only

the interest of Mrs. Padley in the land is affected by the decree. Her husband did not seek to be made a party, and does not complain, and she is in no position to complain for him. The judgment is affirmed. All concur.