ILGENFRITZ v. MUTUAL BENEFIT LIFE INS. CO. OF NEWARK, N. J.

(Circuit Court, W. D. Missouri, C. D.    May 26, 1897.)

PAYMENTS TO UNAUTHORIZED AGENT.

In 1885 plaintiff, through one T., obtained from defendant a loan of $25,000, secured by mortgage. At the maturity thereof the loan was extended for five years, and, in consideration of the extension, was made payable at defendant's office in New Jersey. As the interest coupons matured. they were sent to the F. Bank, at plaintiff's residence, in Missouri. of which bank T. was cashier, and the interest was collected by T. and remitted to the defendant. Before the maturity of the extended loan, plaintiff applied to T. for permission to make a payment in advance of maturity, and. on T.'s assurance that it would be accepted. gave a check to the F. Bank for $7,000. T. did not remit the money to defendant, nor inform it of the payment, but, while collecting interest on the reduced amount from plaintiff, accounted to defendant as for interest on the whole amount of the loan. A similar transaction took place later, when plaintiff paid $5,000 to the bank. Defendant was not informed of the payments till T. absconded. some time later, and the bank failed. *Held*, that the payments so made were not payments to the defendant, and plaintiff was not entitled to have them credited on the mortgage.

G. W. Barnett, for complainant.
Montgomery & Montgomery, for defendant.

PHILIPS, District Judge. In 1885 the complainant, through James C. Thompson, of Sedalia, Mo., obtained from the defendant a loan of $25,000, secured by deed of trust upon real estate. On the maturity of the principal of this debt, she obtained, through said Thompson, an extension of the loan for five more years. As the coupons

of interest became due, they were forwarded by defendant company to the First National Bank of Sedalia, Mo., for collection, with appropriate indorsements thereon, authorizing the bank to collect the same. Thompson was the cashier of said bank. When these coupons were paid by complainant, the money was forwarded by Thompson to the defendant, at Newark, N. J. These payments of interest were made by checks given by complainant on said Sedalia bank, where she usually kept her deposits; or the money would be forwarded by the bank, and charged up to the account of the complainant, with her knowledge and consent. C. E. Ilgenfritz, the son of the complainant, seems to have had a general power of attorney from her for attending to her business affairs. On the 1st day of October, 1892, said C. E. Ilgenfritz called to see said Thompson, and made inquiry as to whether his mother would be permitted to make a payment on said note prior to maturity thereof, and upon the mere assurance of Thompson he gave a check, in the name of his mother, M. D. Ilgenfritz, on the First National Bank, payable to the said bank or order, for the sum of $7,000, with the understanding that it was to be applied as a payment on said note. Thompson neither then applied to the defendant to obtain permission to receive such payment, nor did he at any time inform the defendant of the payment of said sum of $7,000, or remit same to defendant. As the coupons of interest became due on the $25,000, the defendant, as heretofore, sent the coupons to said bank for collection. Thompson, the cashier, would collect from complainant the interest on the basis of the reduction of the principal of the debt by the $7,000 payment, but would account to the defendant as though no part of the principal debt had been paid. On the 3d day of October, 1893, said C. E. Ilgenfritz, for his mother, and in her name, drew a check on the Citizens' National Bank of Sedalia, payable to said First National Bank or order, for the sum of $5,540, which was intended by him to be an additional payment of $5,000 on the principal sum of said debt, and the other $540 was to pay the then accrued interest upon the debt reduced by the former payment of $7,000, and took therefor the following receipt:

"Sedalia, Mo., Oct. 3, 1893.

"Received of Mrs. M. D. Ilgenfritz five thousand dollars, part payment on loan held by Mut. Ben. Life Ins. Co.           J. C. Thompson, Cas.
"$5,000.00."

On the 5th day of October, 1893, after the receipt of said $5,000, said Thompson wrote to the defendant, stating that complainant desired to make a payment on the principal of said debt, and asking permission, if she did, to reloan the money to some other person. He gave no intimation to the defendant of either of said prior payments having been made. On the 9th of October, 1893, the defendant replied as follows:

"We have your favor of the 5th inst., written over the matter of the probable payment about to be made by Mrs. Ilgenfritz on account of the principal of her mortgage. In reply, we would say we prefer, if payment is made by her, that the amount be sent to us. The company does not at present desire to make other loans in your section."

The complainant continued thereafter to pay interest as theretofore on the basis of said supposed reductions of the principal debt, Thompson accounting to the defendant on the basis of the existence of the whole debt of $25,000. On the 4th of May, 1894, the said First National Bank of Sedalia failed, and went into the hands of a receiver. Thompson was insolvent, and fled the country. The first intimation that defendant had of the payment of said sums of money by complainant was conveyed to it on the date of the failure of said bank, by the following telegram from said C. E. Ilgenfritz:

"Sedalia, Mo., May 4, 1894.

"Mutual Benefit Life Insurance Company, Newark, N. J.: At what dates did you receive the two payments made in 1892 and 1893, aggregating $12,-000.00, on the Malinda Ilgenfritz mortgage on her property in Sedalia? Answer at my expense.

"[Signed]                                                    C. E. Ilgenfritz."

The defendant not having received said money so paid by complainant, and the principal of said debt becoming due and remaining unpaid, the complainant, Mrs. Ilgenfritz, filed her bill herein, alleging a payment to defendant of $12,000 on the principal of said debt, and making tender of the balance due thereon, praying to have said mortgage satisfied and the whole of the debt declared paid. The defendant has filed a cross bill asking for a foreclosure of the mortgage. The question to be decided by the court is simply whether or not the payments made to the First National Bank of Sedalia were, in law, payments to the Mutual Benefit Life Insurance Company. The payments in question were made to the bank. The checks in the name of M. D. Ilgenfritz, the complainant, were written by her agent, C. E. Ilgenfritz. The one for $7,000 was drawn on the First National Bank, in favor of said bank. The second one, for $5,000, was drawn on the Citizens' National Bank of Sedalia, in favor of the First National Bank. Both sums went to the First National Bank, and, without the knowledge or consent of the defendant, were credited by the bank on its books to defendant, and were diverted by the bank to the credit of some other debtor of the bank, with the exception of $5,000 later credited back to the defendant. But the entire sum of $12,000 was absorbed by the bank in its business. The evidence not only fails to show that Thompson individually received or appropriated a dollar of the money, but his direct testimony is that he did not. The face of this transaction, therefore, is that the $12,000 were paid by complainant to the First National Bank of Sedalia. To entitle her to credit therefor, the burden rests upon her to prove that the bank had authority from defendant to receive it, in the absence of ratification by defendant. There is scarcely a pretense for such a contention. It is not claimed that the bank had any express authority from the defendant to accept the payments. What is there, then, in the evidence to warrant a finding that such authority arose from implication? The only instances shown in which the bank hitherto had acted for the defendant were in collecting for it coupons of interest from Mrs. Ilgenfritz, and on other mortgage bonds; but in every such instance the coupons were indorsed

by defendant and sent to the bank, to be collected by it in the regular course of banking business. Both on reason and authority, these transactions gave no colorable authority to the bank to collect any other debt or claim on behalf of the defendant. Padley v. Neill, 134 Mo. 378, 35 S. W. 997; Klindt v. Higgins (Iowa) 64 N. W. 414; Security Co. v. Douglass (Wash.) 44 Pac. 257. The only answer attempted on argument by complainant's counsel to be made to this embarrassing aspect of the case is that Thompson, by the course of dealing between him and the defendant, was held out to the public as its agent authorized to make such collections. If that were conceded, it could not help the complainant, because of the stubborn fact that the payments were not made to Thompson. He neither got nor appropriated the money. The fact that he may have consented to the appropriation of the money by the bank could upon no rule of law bind the defendant, as he had no express or implied authority to consent that the banking corporation might embezzle the defendant's money. The only explanation made by C. E. Ilgenfritz in his deposition respecting the payments is that he supposed, from what he had heard, that Thompson had authority to receive such payments, and that he considered Thompson and the bank "the same." But neither his suppositions nor assumptions can conclude the absent creditor, nor confound the individuality of Thompson and the corporate entity, the bank. If Thompson had in fact authority to receive such payments, the debtor could exonerate herself from the demand of the principal only by payment made directly to this agent. She could not, of her own motion, conclude the creditor by paying the money into the bank to the credit of the defendant, even by the direction of the agent. His agency would extend only to the taking of the money from the debtor, and not to an authorization of the debtor to make a deposit in any bank. The debtor so making the deposit would take the risk of the depositary accounting therefor. There is not in this case any evidence that Thompson even directed or requested C. E. Ilgenfritz to make payment in the way he did to the bank. The checks are in Ilgenfritz's handwriting. And conceding that Thompson had knowledge of such fact, and that he acquiesced therein, I know of no rule of the law of agency that such knowledge and ratification by the agent could bind the principal; for the palpable reason that his agency extended only to the receipt of the money itself, and its transmission to the principal. In this view of the case, it is hardly necessary to enter upon any discussion of the question of the nature and extent of Thompson's agency. But there are a few conspicuous facts, touching upon this issue, quite decisive to my mind. By the terms of the first mortgage bond, executed in 1885, the principal and interest were payable at the First National Bank of Sedalia. But in the agreement for the extension of this loan, of date December 1, 1890, the complainant, over her own signature, stipulated, in consideration of the extension, that both principal and interest should be paid at the office of the Mutual Benefit Life Insurance Company, in Newark, N. J. She is presumed, as a matter of law, to have been familiar with this provision of the extension agreement.

She was thereby advised that the place of payment of the principal of this bond was at the office of the defendant, and not at the Sedalia bank. And therefore, when Thompson, or anybody else, should consent that the payment could be made at the bank in Sedalia, it was her duty, at her peril, and that of her agent, to know and see that the person or corporation to whom she made payment had authority to waive this explicit compact. More than that, the contract of extension did not provide for any payment of the principal until the end of the five years. It did not contain an option for an earlier payment. All the lender sought by the loan was semiannual interest, and security for the principal during that time. To pay any part of the principal prior to the expiration of the five years would therefore require the express consent of the creditor. Without one word of inquiry as to whether Thompson had such consent, her agent paid to the bank her money, upon the bare assumption that all that was necessary was to obtain Thompson's consent thereto. And from the evidence in this case, and other cases of like import before this court, it is quite apparent that both Thompson and the bank were always open to receive anybody's money about that time. The very utmost that C. E. Ilgenfritz could testify to in this particular was that he had heard that Thompson had received such part payments, but could give only one instance,—that of one Woods. But an examination of the correspondence between defendant and Thompson shows that in every instance where payments had been made of the principal, and extensions made, Thompson applied to defendant respecting the matter; and in no instance does it appear that, with the knowledge or approval of defendant, did he ever assume, of his own motion, to receive such payments. The transaction with Woods did not occur until 1893, long after the payment of the $7,000. It does not even appear that Ilgenfritz made inquiry of Woods or anybody else as to the circumstances of any payments made by them, or ask Thompson one word respecting his authority. The bond on account of which payments were made was not at the Sedalia bank, nor was it, under the stipulation for extension, payable there. A debtor who thus pays without the precaution to see that the party to whom he pays holds the obligation does so at his peril. Cummings v. Hurd, 49 Mo. App. 139; Englert v. White (Iowa) 60 N. W. 224, 225; Murphy v. Barnard, 162 Mass. 72, 38 N. E. 29; Johnston v. Investment Co., 46 Neb. 480, 64 N. W. 1100; Joy v. Vance (Mich.) 62 N. W. 140. The postulates laid down by Mr. Justice Field in Ward v. Smith, 7 Wall. 447, cover this case:

"When the instrument is lodged with the bank for collection, the bank becomes the agent of the payee or obligee to receive payment. The agency extends no further, and without special authority an agent can only receive payment of the debt due his principal in the legal currency of the country, or in bills which pass as money at their par value by the common consent of the community. In the case at bar only one bond was deposited with the Farmers' Bank. That institution therefore was only agent of the payee for its collection. It had no authority to receive payment of the other bonds for him, or on his account. Whatever it may have received from the obligors to be applied on the other bonds, it received as their agent, not as the agent of the obligee. If the notes have depreciated since in its possession, the loss must

be adjudged between the bank and the depositors. It cannot fall upon the holder of the bonds."

This case further holds that the collecting agent is limited by law to receive for the debt of his principal only that which the law declares to be legal tender, or which, by the consensus of the business world, is considered and treated as money. It would be more than a pleasure to me, personally, if the facts and law of this case permitted me, to follow my sympathies, and relieve this complainant of the hardship of having to pay this money over again, provided she fails to collect it from the bank. But I must follow where the evidence and the law direct. It results that the issues on complainant's bill are found for the defendant, and the prayer of defendant in its cross bill is granted. Decree accordingly.