MUTUAL BEN. LIFE INS. CO. OF NEWARK, N. J., v. MILES et al.

(Circuit Court, W. D. Missouri, C. D. May 26, 1897.)

PRINCIPAL AND AGENT—EXISTENCE OF AGENCY—PAYMENTS TO ASSUMED AGENT.
    In 1887, defendants, through one T. as their agent, borrowed $3,000 of plaintiff, and gave a note therefor, payable at their residence, in Missouri, in five years, and secured by mortgage. In 1892 the loan was extended for five years, and, in consideration thereof, made payable at plaintiff's office, in New Jersey. In 1894 defendants applied to T. to have him secure a release of part of the mortgaged land, which defendants had sold, on payment of $1,000. Plaintiff informed T. that it would not release the land, but, if the title were satisfactory, it would accept payment of the $3,000 loan and make a new loan of $2,000 to defendants on the unsold land. Defendants then delivered to T. a check for $1,000, drawn to the order of a bank of which T. was cashier, and a new mortgage for $2,000, for which T. receipted as cashier of the bank. Plaintiff did not release the $3,000 mortgage, and knew nothing of these transactions till T. absconded, some time later, when the $2,000 mortgage was found in the bank. *Held*, that the $1,000 was not paid to plaintiff, in fact or in law, and plaintiff was not bound to credit the same on its mortgage.

G. W. Barnett, for complainant.
Montgomery & Montgomery, for defendants.

PHILIPS, District Judge. On the 1st day of July, 1887, the defendants borrowed of the complainant the sum of $3,000, for which they executed to complainant their promissory note, payable five years after date, with 6 per cent. interest per annum, payable semiannually on the 1st days of January and July in each year. To secure the payment of this note, they executed a deed of mortgage on certain real estate, consisting of three lots in the city of Sedalia, Mo. This loan was effected by defendants through one James C. Thompson, by sending in their application to the complainant company, containing the usual provisions that they constituted said Thompson their agent therefor. By the terms of the note, the same was made payable at the First National Bank of Sedalia, Mo., with exchange on New York City. On the 1st day of July, 1892, on the application of defendants, this loan was extended by an agreement in writing for

an additional period of five years from July 1, 1892. This agreement provided, inter alia, that in consideration of the extension both principal and interest should be paid, when due, at complainant's office in Newark, N. J. The lots in question belonged to the defendant Mary T. Miles, the wife of co-defendant, John R. Miles, who acted in these transactions as agent for his wife. On or about the 1st day of March, 1894, the defendants made a contract of sale of one of said lots and 10 inches off of another thereof to one Drucker, and applied to said Thompson to have him obtain a release of the property so sold to said Drucker from said mortgage deed on the payment of $1,000 on said $3,000 loan. Thereupon, on the 7th day of March, 1894, Thompson wrote to the treasurer of the complainant, advising it of defendants' proposition, and asking their consent thereto; to which said treasurer made answer, on March 10, 1894, as follows:

"Mr. J. C. Thompson, Sedalia, Mo.—Dear Sir: Your favor of the 7th inst. is received. In reply, would say that it is contrary to our rules to make releases of portions of mortgaged premises. If John R. Miles and wife will prepare and present an application for a new loan of $2,000.00 upon the property they desire us to retain as security, we will have the same considered, and, if granted. new loan made and present paid. I should receive some assurances that the interest will be promptly paid in the future.

"Yours, truly, Sam'l W. Baldwin, Ass't Treasurer."

On the 16th day of March, 1894, Thompson wrote the following letter:

"Samuel W. Baldwin, Esq., Ass't Treas., Newark, N. J.—Dear Sir: Referring to your favor of March 10th, concerning loan to John R. Miles and wife for $3,000.00, upon which they desire to make payment of $1,000.00, and a release of part of the ground, I now hand you herein new application for a loan of $2,000.00 upon the ground mentioned in my letter of the 7th inst., which please submit, and advise me of your decision in the matter.

"Yours, truly, J. C. Thompson."

On March 21, 1894, the following telegram was sent:

"Mr. J. C. Thompson, Sedalia, Mo.: Miles' application approved, subject to title. Edward L. Dobbins, Secretary."

So far as complainant is concerned, this is the last heard of the matter by it until after the 4th day of May, 1894, at which time the said First National Bank of Sedalia, Mo., of which Thompson was cashier, failed, and was placed in the hands of a receiver, and Thompson fled the country to Mexico. The defendant John R. Miles, without more, joined his wife in a deed of trust on the unsold portion of said lots to the complainant for the sum of $2,000, and drew his check for the sum of $1,000 in favor of the First National Bank of Sedalia, and thereupon the bank passed the same to the credit of the complainant, and absorbed the proceeds thereof in its business. At the time of the payment of said $1,000 as aforesaid, the following receipt was given therefor:

"Received of Mrs. Fannie Drucker $1,000.00, to be applied on deed of trust of Mutual Benefit Life Insurance Company of Newark, N. J., as a release of lot 3 and 10 inches off of the east side of lot 2, in block 57, in Smith & Martin's Second addition to the city of Sedalia, said deed of trust to be released within the present month, and is recorded in Book 53, page 441, Records of Pettis County, Mo.

[Signed] J. C. Thompson, Cash."

84 F.—3

After the failure of the bank and the flight of Thompson, the receiver in charge of the bank found said $2,000 deed of trust among papers in the bank.

The question to be decided is whether or not the said mortgage for $3,000 should be canceled and satisfied by complainant, and the second deed of trust for $2,000 accepted by it. In other words, was the $1,000 paid to complainant in fact and in law? Because of the fact that Thompson had obtained the original loan for the defendants, and the application for extension thereof had been made and obtained through him, the defendants seem to have assumed that he was the proper person to apply to to effect the release of part of the mortgaged premises on the payment of the $1,000. It is not contended seriously, by reason of Thompson's office in effecting the loan for defendants, that authority could be implied in him to thereafter collect either the principal or interest on the bond. Englert v. White (Iowa) 60 N. W. 224; Cummings v. Hurd, 49 Mo. App. 147. The evidence fails to show that Thompson individually ever made collection of even the interest on the bond. As in the Ilgenfritz Case (decided contemporaneously herewith) 81 Fed. 27, the coupons were sent by the company, indorsed, to the First National Bank of Sedalia for collection in the usual course of banking business. The fact that defendants went to the bank, and paid the interest, and it was forwarded by Thompson, could give no claim of a colorable holding out by the company of Thompson as their general agent for the collection of any money that any debtor might wish to pay on bonds to the complainant. More than that, the defendants had express notice that the principal of this bond was not payable at the First National Bank at the time the $1,000 was paid therein. The original contract expressed in the bond provided for payment at said bank, but in consideration of the extension of the loan it was changed, and both principal and interest thereafter were made payable at the office of complainant in the city of Newark, N. J. The principal not being due when defendants proposed to make payment thereon, it could only be done by a conventional rearrangement between the obligors and the obligee. And especially must the presumption be indulged that no such alteration of the mortgage bond could be effected whereby any part of the security could be released, without the express consent of the mortgagee. The exercise of such plenary power by the local agent would have been so extraordinary as to excite special wonder and inquiry of the mortgagors as to the authority of such an agent. Thompson did not even assume to so act when the defendants applied to him to effect such release on the payment of the $1,000. This is rendered absolutely certain by the deposition of defendant John R. Miles. He states in his deposition that after the sale was made to Mrs. Drucker he went to see Mr. Thompson, "to know if, by paying off $1,000, if that would release that place, and take it off that place, and leave the remaining $2,000 on the home place where we live. He said he would write immediately to the company, and find out." And he further admitted that Thompson showed him the letter received from the company, which was evidently the letter of March 10, 1894. This letter advised him that Thompson had no authority to

act in respect of this particular transaction, unless specially authorized thereto by the company.    Accordingly, the defendants made out and sent through Thompson their application for a new loan of $2,000, which Thompson forwarded in the letter of March 16, 1894.    In this letter Thompson asked the treasurer to submit the matter to the company, and advise him of the decision.    To this the secretary of the company made answer by telegram, saying, "Miles' application approved, subject to title."    This was the last ever heard of the matter by the company until after the collapse of the bank, and Thompson had fled.    No title was submitted to the company, and no deed of trust nor money was forwarded to them, and no release of the first mortgage was given by the company.    If the $1,000 is to be regarded, as defendants claim, as payment on the $3,000 bond, it was not paid to the company at its office, as the contract of extension expressly stipulated it should be; and, if Thompson could be regarded as clothed with authority to receive it, the money was not paid to him, but to the bank, by check made payable to the bank, and a receipt was taken therefor from Thompson as cashier of the bank.    This was done in the face of the fact that the authority of the bank to receive either the principal or interest of the debt had been revoked in consideration of the extension agreement.    Thompson never got the money, but the bank received and appropriated it.

As the facts in the case show that this whole transaction, with the knowledge of defendants, was made to depend upon the special arrangement, it is useless to discuss the suppositions of defendants respecting the scope of Thompson's agency in effecting the loans of the company.    The money was not paid to him, and there is not the shadow of authority that the bank had any agency to receive this money for complainant.    The defendants, with a confused identity in law and fact of Thompson and the bank, elected to leave their money with the bank, and trust it to account therefor to the complainant. They thus constituted the bank their agent for this $1,000 payment, and must look to it for its recovery.    Ward v. Smith, 7 Wall. 451.

There is no evidence in this case to warrant the court in finding that Thompson directed the defendants to draw or have drawn the check on the bank as a method of payment to Thompson individually. And, if there had been such testimony, as matter of law Thompson had no authority as a claimed agent of complainant to receive or accept anything from defendants except money.    He had no implied nor incidental authority to direct a payment to or deposit in the bank, so as to bind the principal.    When the check was made payable to the bank, and passed to complainant's credit therein, the bank was insolvent in fact, and known to be so by Thompson.    The money could not then be drawn out of the bank on the order of anyone save that of complainant, if ratified by them.    Thompson had no special or implied authority from complainant to check out its account.    It does seem to me that if such a method of payment should be held to constitute payment to the absent creditor on a bond then in its possession, and payable by express agreement at its office in New Jersey, the court, instead of enforcing, would unmake, a contract.    It results that the issues are found for complainant, and decree accordingly.