RICHARD R. PACE, Defendant in Error, v. THE GILBERT SCHOOL et al., Plaintiffs in Error.

Kansas City Court of Appeals, April 2, 1906.

1. **BILLS AND NOTES: Guarantor's Notice: Agency to Collect: Construction.** A loan company attached a slip to the note it took saying that payment by it was as guarantor and desiring others handling the note not to mark it "paid." *Held,* that it did not thereby reserve to itself the right of collection and dominion over the note with notice thereto to the assignee, but simply desired to protect itself when it made payment under its guaranty.

2. ——: **Place of Payment: Notice to Assignee: Course of Business.** Notes taken by a loan company were made payable at a certain bank where holders presented their coupons and notes and received their money. *Held,* the assignees of such notes were not affected with notice of the course of business between the maker, the loan company and the bank at which the notes were payable.

3. ——: **Negotiability: Attorney's Fee: Contract.** A note providing for the payment of attorney's fee in case of collection by suit is non-negotiable, as also where there is a contract for payment of certain other rates and assessments mentioned in the note.

4. ——: ——: ——: ——: **Notice by Assignee.** A non-negotiable note is subject to section 8161, Revised Statutes 1889, and the maker is entitled to all credits and offsets against the payee up to the time the maker receives notice from the assignee of the assignment of the note. [Padley v. Neill, 134 Mo. 364, distinguished.]

Error to Macon Circuit Court. —*Hon. Nat. M. Shelton,* Judge.

AFFIRMED.

118 App—24

*S. P. Bond* for plaintiff in error.

(1)   The promissory note, or coupon bond in question, is a negotiable instrument.   Fogg v. School District, 75 Mo. App. 190;   Bank v. Skeen, 101 Mo. 688;   Bank v. Com. Co., 93 Mo. App. 136; Clark v. Skeen, 61 Kans. 526; Padley v. Neill, 134 Mo. 376.   (2)   Where a negotiable note is endorsed before it is due, a payment made to the endorser before his endorsement will not be an extinguishment of the debt so far as the endorsee is concerned, unless he has notice of the payment at the time he gets the title to the note (Story on Bills, 417; Chitty on Bills, ch. 6; Prior v. Jacocks; 1 John Cas. 169).   Of course this principle will apply *a fortiori* to payments made after the endorsement.   Grant v. Kidwell, 30 Mo. 457; Johnson v. McMurray, 72 Mo. 278.   (3) The coupon bond in question is and the coupons attached are negotiable instruments.   Padley v. Neill, 134 Mo. 364, 376.   (4)   The Omaha Loan & Trust Company was not at the time of the payments to it by Pace the agent of the Gilbert School, nor was it the agent of the Gilbert School at any time.   Padley v. Neill, 134 Mo. 379; Lay v. Honey, 89 N. W. (Neb.) 1002.

*Dysart & Mitchell* for defendant in error.

(1)   On negotiability bond: where a note otherwise negotiable provides for the payment of an attorney's fee its negotiability is destroyed.   The notice of sale was published because of default in the payment of coupons, which provided for the payment of an attorney's fee on their face.   Bank v. Gay, 63 Mo. 33;   Clark v. Barnes, 58 Mo. App. 667, 672; McCoy v. Green, 83 Mo. 626, 633; Bank v. Jacobs, 73 Mo. 35; Bank v. Marlow, 71 Mo. 618; Storr v. Wakefield, 71 Mo. 622; Hope v. Barker, 112 Mo. 338, 341.   (2)   "A mortgage executed simultaneously with a note which it secures is a part of the contract and they are to be construed together, and the negotiable character of the note is destroyed

by provisions in the mortgage which affect the certainties requisite for negotiable paper." 4 Am. and Eng. Enc. of Law (2 Ed.), p. 144; Brooke v. Struthers, 68 N. W. Rep. 272, 110 Mich. 562. (4) Notes otherwise negotiable coupled with collateral agreements are rendered non-negotiable. Killam v. Schoeps, 26 Kans. 310, 40 Am. Rep. 313; 4 Am. & Eng. Enc. of Law (2 Ed.), pp. 124, 125 and notes; Daniel on Neg. Instruments (5 Ed.), p. 178, sec. 156; Ry. v. Atkinson, 17 Mo. App. 494 and cases cited; Fitzharris v. Leggatt, 10 Mo. App. 527. (5) Necessity of notice to the payor when note not negotiable. Such notice must be a notice of the assignment, and must disclose the name of the assignee. R. S. 1899, sec. 4488; Bartlett v. Eddy, 49 Mo. App. 32; Bank v. Stewart, 73 Mo. App. 279; Bishop v. Chase, 156 Mo. 158. (6) An assignment of a note with a guarantee is not an endorsement of the note to the assignee in the commercial sense of the law merchant. While such an assignment passes the title to the assignee, the latter takes the note subject to equities, including a payment before notice of the assignment. Norton on Bills and Notes (2 Ed.), (Hornbook Series), pp. 129, 130; Trust Co. v. Bank, 101 U. S. 68; Wetter v. Kiley, 40 Am. Rep. 670, 95 Pa. St. 461; Bank v. Walker, 5 Fed. Rep. 399; VanKeuren v. Corkins, 66 N. Y. App. 77; Miller v. Gaston, 2 Hill (N. Y.) 188, 194. (7) The evidence in this case shows that the Omaha Loan and Trust Company was the agent to collect the bond, No. 8036, and a payment to the Omaha Loan and Trust Company was a payment to the holder of the bond. The methods of transacting the business was competent evidence to prove agency. Bank v. Ins. Co., 145 Mo. 127; Johnson v. Hurley, 115 Mo. 520; May v. Trust Co., 138 Mo. 275; Security Co. v. Richardson, 33 Fed. Rep. 22; Bronson v. Chappell, 12 Wall. (U. S.) 681; Stockton v. Watson, 101 Fed. Rep. 490; Gilden v. Bank, 69 Fed. Rep. 912; Garrison v. O'Donald, 73 Mo. App. 621.

BROADDUS, P. J.—On the 21st day of November, 1898, Anna L. Frazee and Lloyd Frazee, her husband, gave their bond to the Omaha Loan & Trust Company of Omaha, Nebraska, for the sum of twelve hundred dollars, bearing interest thereon at the rate of five and one-half per cent per year, from the date thereof until maturity on the 1st day of November, 1905, payable semi-annually according to the tenor of fourteen interest notes, one being for $29.35, and thirteen each for $33, bearing even date therewith, both principal and interest notes payable at the Chemical National Bank, New York City. And if default be made in the payment of any of said notes or any part thereof, as the same matured, for the space of thirty days, the whole amount thereof became due and payable, and the mortgagee, its legal representatives or assigns were empowered to proceed at once to collect the note and forclose the mortgage given to secure said note and sell the mortgaged real estate, situated in Macon county, Missouri. Said mortgage was duly recorded. All of the coupons attached to the principal bond provided for attorney's fees if collected by suit.

Anna L. Frazee and her husband on November 25, 1898, deeded to R. R. Pace by warranty deed the real estate mentioned in the deed of trust to secure the notes, subject to the incumbrance of $1,200, etc., due to the Omaha Loan & Trust Company.

The note and deed of trust were assigned or endorsed in blank December 5, 1898, and sent east by the Omaha Loan & Trust Company and sold by it at Winstead, Connecticut, on January 10, 1899, before maturity for a valuable consideration and in good faith to the Gilbert School.

The Gilbert School deposited the coupons in the First National Bank of Winstead, Conn., with instructions to collect at the Chemical National Bank, New York City, where the same were paid as they became

due, and six were promptly paid, and when it present-
ed the seventh it was refused payment. It thereupon
demanded payment of the coupon of the makers of the
note and the one who had now taken the place of the
makers, and being refused, the Gilbert School through
the sheriff of Macon county, the trustee in the deed of
trust having refused to act, proceeded to duly advertise
to sell the real estate in the deed of trust to satisfy the
coupon notes then due and the principal note, which it
elected to declare due and payable under the note and
deed of trust upon the default of the interest. There-
upon the defendant in error brought this action for an
injunction against the plaintiff in error and certain
other parties for the purpose of restraining the sale of
said real estate under the deed of trust and the cancel-
lation of the promissory note, or coupon bond, which
said trust deed on said land was given to secure.

The answer and cross-bill is a general denial and
sets up, among other things, the special defense that
the promissory note, or coupon bond, and coupons were
purchased from the Omaha Loan & Trust Co., in good
faith, for value received, before maturity; and they were
secured by a certain deed of trust mentioned in said
answer; that default had been made in the payment of
the seventh and eighth coupon notes; that upon the sev-
enth interest coupon note not being paid when due, de-
mand for payment thereof being made and refused, the
Gilbert School elected to declare the whole principal
sum to become immediately due and payable. The
plaintiff in error prayed for a decree of foreclosure; for
an attorney's fee as provided in the deed of trust in the
sum of ten per cent of the amount due on the deed of
trust and notes; and for all proper relief.

At the time the said mortgage was executed the
Frazees also entered into an option agreement with said
Omaha Loan & Trust Company, by which the latter
agreed "to accept deposit sums of $50, or any multiple

thereof, at any time on account of said loan, in accordance with the terms of its certificate of deposit" — the certificate to provide that the company would allow interest at the rate of five and one-half per cent per annum, to be applied to the interest coupons annexed to the note; and the principal money so deposited, at the maturity of the loan, to be applied to the principal note.

The said Omaha Loan & Trust Company assigned the note and mailed it to their agent in the east to be negotiated. The assignment was as follows: "For value received, the Omaha Loan & Trust Company assigns this note to .............. or order, and guarantees: first, the collection of the principal of the within note; second, the prompt payment of the coupons attached thereto." A printed slip was attached to the note or bond containing the following:

*"Do not detach this slip.*

"Payment hereof, when made to this company, being made as guarantor only, it is desired that any bank or individual through whose hands these papers may pass for transfer, collection or otherwise, will refrain from placing on any of said paper any stamp or mark containing the word 'paid' or denoting in any way a payment, which might interfere with collection by the company.

(Signed)    "OMAHA LOAN & TRUST COMPANY."

Six of the coupon notes were paid by the said company out of the money in its hands, paid to them by Pace, the defendant in error, as will more particularly appear hereafter. The other coupon notes were not paid by Pace for the reason also hereafter shown. It was disclosed that neither said company, Hicks, Yatz & Co., the agent of defendant in error, nor the defendant in error, knew who was the holder of the note and coupons, and that money paid on the six coupon notes was received by the holder, the plaintiff in error, at the Chemical National Bank of New York, the place of pay-

ment.  It was shown that the company did a large business of the kind in controversy.  Its method of business was to receive payment of coupons, but not to pay them until presented.  The coupons by their terms being payable at the bank mentioned in New York, the holders would forward them to that bank for payment at their maturity.  Said bank would pay them on presentation and charge the amount paid to the Omaha National Bank under an arrangement made by the company with the two banks.  Twice each month the former bank forwarded such coupons as they had paid them to the latter bank, with a statement.  Then the latter would present them to the company for payment.  Under such an arrangement, makers of notes and the holders in the east had no communication with one another, and such makers were not likely to know who were the holders of the paper.  The holders were only required to present their notes to the New York bank and receive payment.

But defendant in error contends that the slip mentioned, attached to the notes, was notice to each holder that the company, being a guarantor reserved to itself the right of collection and complete control and dominion over such notes, of which the assignee had notice.  But we think otherwise; there is nothing in the language to warrant such conclusion.  Its object appears to have been to protect said company in case it made a payment under its guaranty.  Under such circumstances it did not want notes it had paid, so marked, but left free from such marks so that, in case it paid under its guaranty, the papers would be in condition suitable for collection from the makers.  The only authority to collect was in its own interests and not for the assignees of the notes.

As the notes in question were payable at the Chemical Bank in New York, the general course of business, as we have seen, was for said bank to pay them on pre-

sentation, charge the National Bank of Omaha with the amount of payments, which it then collected from the said company. It was not shown that the assignees and holders of the notes had any knowledge of any such course of business. All they had to do was to receive payment at the bank according to contract. They had the right to rely upon the contract that the makers would have the funds at the place, for which reason they are not to be charged with any miscarriage of such funds —that was the risk the makers had assumed. We therefore conclude that said company was not the agent of plaintiff in the collection of said notes. Padley v. Neill, 134 Mo. 364.]

On February 28, 1899, defendant in error paid, through Hicks & Co., to the company $900; on April 11, 1899, $300. These payments were made by Pace, defendant in error, to discharge the principal bond. On the 19th of April, 1899, the company first made the claim that the sum of the said two payments, viz., $1,200, was received on deposit under the option agreement, and not as a payment, and notified Hicks, Yatz & Co., Pace's agents, that it would not treat said sum as a payment without a bonus was paid for a prepayment. Out of this $1,200 the company paid to the holder the interest coupons, as they fell due, until the first day of November, 1901. The company failed December 11, 1901, and made no further payment out of said sum. There is no evidence that Pace had any notice or knowledge that the notes had been assigned when he made the payment amounting to $1,200.

Defendant in error contends that as both the coupon notes and the principal notes were non-negotiable under the law merchant, he is not liable to the plaintiff in error, having paid them without notice of their assignment. The coupon notes each provide for the payment of an attorney's fee. Such notes are non-negotiable. [First Nat'l Bank of Trenton v. Gay, 63 Mo. 33; Hope

v. Barker, 112 Mo. 338; National Bank v. Jacobs, 73 Mo. 35.]   The principal obligation for $1,200 is not in the usual form of a note, but is we think, properly styled "Coupon Bond." It is very lengthy and occupies an entire page in the abstract.   It is in part as follows:

"On the first day of November, 1905, for value received, we promise to pay to the order of the Omaha Loan & Trust Company the principal sum of twelve hundred dollars with interest thereon at the rate of 5 1-2 per cent per year from the date hereof until maturity, payable semi-annually according to the tenor of fourteen interest notes, one being for twenty-nine and 35-100 dollars, and thirteen, each for thirty-three dollars, bearing even date herewith, both principal and interest notes payable at the Chemical National Bank, New York City.   And if default be made in the payment of any of said notes or any part of them, as the same matures, for the space of thirty days, or if the maker of this note and interest notes attached hereto shall allow the taxes or any other public rates and assessments on the property or any part thereof, given as security for the aforesaid notes, to become delinquent, or shall do any act whereby the value of said mortgaged property shall be impaired, then upon the happening of said contingencies, the whole amount herein secured shall at once be and become due and payable, and the mortgagee, its legal representatives or assigns, may proceed at once to collect this note and foreclose the mortgage given to secure said note and sell the mortgaged property or so much thereof as shall be necessary to satisfy said debt, interests and costs, and all taxes, public rates or assessments that may be due thereon or that may have been paid or incurred by the mortgagee, his representatives or assigns, and which may be included in the judgment in such foreclosure case."

It will be observed that the bond not only provides

for its payment, but also for the payment of the coupon notes attached to it, and that if default shall be made in the payment of any of said notes in thirty days after due, or if the maker of the notes, including the bond, shall allow the taxes or any other public rates or assessments on the property to become due, etc., then the whole amout shall become due and payable, and the mortgagee may proceed at once to collect the note and foreclose the mortgage, and judgment may be rendered for any such taxes, etc., that may be due or have been paid or incurred by the mortgagee. The bond falls within the rule announced in the foregoing authorities, as the amount of taxes and assessments to be paid are uncertain and contingent.

The case of Padley v. Neill, 134 Mo. 364, cited by plaintiff in error, is not in point. Although the bond in that case is similar to the one here, payment by the maker was not made to the payee, but to the successor of the Western Farm Mortgage Company, the latter having negotiated the loan. The court held, that as the makers did not make the payment to the payee without notice of the assignment, the case was not governed by section 8161, Revised Statutes 1889, which provides that "in actions on assigned accounts and non-negotiable instruments, the defendant shall be allowed every just set-off or other defense which existed in his favor at the time of his being notified of such assignment." But the case at bar is essentially different; as the defendant in error paid the bond to the payee with accumulated interest without notice of the assignment and without notice that the Omaha Company was holding it as a deposit, the case is governed by said section of the statute, the instrument being non-negotiable.

For the reasons given the cause is affirmed. All concur.